[Civil No. 3554. Filed June 3, 1935.]

[46 Pac. (2d) 110.]

# HATTIE L. MOSHER, Appellant, v. E. POWER CONWAY, Appellee.

Mr. John W. Ray, for Appellant.

Messrs. Kibbey, Bennett, Gust, Smith & Rosenfeld, for Appellee.

LOCKWOOD, C. J.—This is a suit by E. Power Conway, hereinafter called plaintiff, against Hattie L. Mosher, hereinafter called defendant, and others, to enforce certain paving liens alleged to have been acquired by plaintiff by virtue of a subrogation and assignment. The property involved is lots 6 and 7 in block 14, East Evergreen addition to the city of Phoenix, which adjoins Fifth and Culver Streets in that city, and the facts, with one possible exception, are not in dispute, and may be stated as follows:

Defendant Mosher was the original owner of the lots. At some time between the years 1913 and 1919, certain street improvements were made on Fifth Street under the provisions of chapter 13, title 7, Revised Statutes of Arizona 1913 (paragraph 1953 et seq., Civ. Code), known as the act of 1912. Under this act separate bonds for the amount of the assessments were issued against each of the said lots. At a later period Culver Street was improved under the provisions of chapter 144, Session Laws of 1919, known as the act of 1919. Under this act separate assessments were made against each of the two lots

and bonds issued against the funds created by the assessments levied upon all of the property in the district assessed. At a later period another improvement was made on Fifth Street under the act of 1919, but the lien for that improvement attached only to lot 7, the assessment against lot 6 having been paid in cash. Defendant made payment of the assessments for the first improvement for a number of years, but finally made default in payment, and the holder of the bonds caused the city treasurer to make separate sales of said lots in accordance with the provisions of the act of 1912. At said sale both the lots were purchased by Coit I. Hughes, subject to the right of redemption authorized under the act.

Defendant Mosher thereafter made default in payment of the assessments levied for the second improvement and the superintendent of streets sold lots 6 and 7 for such assessments, in the manner provided by the act of 1919. One Maurice F. Fox was interested in the bonds issued for this improvement and purchased the lots at that sale, receiving the usual certificates of sale, but since the lots had previously been sold to Hughes for a default of the first assessment, Fox, prior to the expiration of the right to redeem from the first sale, paid to the city treasurer for redemption from the Hughes sale the amount bid at the sale by the latter, plus the statutory penalty. Hughes had sought to prevent the sale under the second improvement, but this court held in the case of *City of Phoenix* v. *Hughes,* 36 Ariz. 399, 286 Pac. 191, that the sale to him did not cut off the city's right to make a second sale of the lot for the lien of the second improvements, and Hughes finally accepted the payment made by Fox for redemption, as aforesaid. Before the expiration of the time to redeem from the second sale at which Fox had pur-

chased, defendant Mosher paid to the superintendent of streets the amount required to redeem from that sale plus the penalties, but did not pay or tender to said superintendent, or anyone else, the amount paid by Fox to redeem from the sale to Hughes. Thereafter the superintendent of streets, the assessments thereon being in default, sold lot 7 under the third improvement and it was purchased by Don P. Skousen. The situation then existing was that Fox, the purchaser under the second sale, had redeemed from the first sale, and that defendant Mosher, the original owner of the lot, had attempted to redeem from the second sale by paying the amount for which the lots were sold under said sale, plus penalties, but without paying or tendering to pay to Fox, the purchaser at the second sale, the amount which he had paid to Hughes to redeem from the first sale, and that Skousen had purchased at a third sale. Fox was in doubt as to the effect of the purchase by Skousen under the third sale upon his interest, and paid to the superintendent of streets the proper amount to redeem from the sale to Skousen, which money was accepted by the latter. Thereafter Fox assigned all the rights which he had acquired by virtue of the various proceedings set forth above, to plaintiff, Conway, and the latter brought this suit asking that the lots be again sold for the amounts paid by Fox to redeem from the Hughes and Skousen sales, his theory apparently being that redemption by Fox from the first sale subrogated the latter to the rights of Hughes, and that since Fox had redeemed from the Skousen sale, in order to prevent the acquisition by the latter of a legal title which might prevail over the equitable rights of Fox, he was also subrogated to the rights of Skousen.

 ·· The first question involved in this appeal is· the applicability of the right of subrogation to the redemptions made by Fox from the various sales above set forth. · Subrogation is the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt. It is a creature of equity, and was adopted from the Roman and not from the common law. Its purpose is the prevention of injustice and is the mode which equity adopts to compel the ultimate payment of a debt by· one who in justice, equity and good conscience ought to pay it. It rests upon the principle that substantial justice should be attained, regardless of form. While the nature and grounds of subrogation are very clear, the difficulty arises in its application to the innumerable complications of business, and no general rule can be stated which will afford a test in all cases for its application. Whether it is applicable or not depends upon the particular facts and circumstances of each case as it arises. This remedy has been applied much more extensively in American than in English jurisprudence, and the modern tendency is to extend its use rather than to restrict it. While it was originally limited to transactions between principals and sureties, it now has a very liberal application, its principle being modified to meet the circumstances of cases as they arise. The general rule of equity which is probably most often invoked in cases of subrogation is that he who seeks equity must do equity, and subrogation can only be granted when an equitable result will be reached. It involves three elements: (1) A valuable right; (2) a person who owns the right; and (3) a person who seeks to be substituted in that ownership. There must exist a claim or obligation against the debtor; an original

right to that claim on the part of him in whose place substitution is sought, and some right belonging to him who seeks the substitution which will be protected thereby. So when one, being himself a creditor, pays another creditor, whose claim is preferable to his, it is held that the person so paying is subrogated to the rights of the other creditor. Fox was entitled to redeem from Hughes under subdivision (g), paragraph 1973, Revised Statutes of Arizona 1913 (Civ. Code), which reads as follows:

"Subdivision g. A redemption of the property sold may be made by the owner of the property, or any party in interest, within twelve months from the date of purchase, or at any time prior to the application for a deed, as hereinafter provided. Redemption must be made in lawful money of the United States, and when made to the city treasurer he must credit the amount paid to the person named in his certificate, and pay it on demand to him or his assignee."

██ It seems clear to us, according to the principles above stated, that when Fox, in order to protect his lien under the second improvement, redeemed from Hughes' purchase under the first sale, he was subrogated to the rights which Hughes had acquired by his purchase against the land involved. These rights are set forth in subdivisions (f) and (i), paragraph 1973, Revised Statutes of Arizona 1913 (Civ. Code), as follows:

"Subdivision f. Immediately on the sale, the purchaser shall become vested with a lien on the property, so sold to him, to the extent of his bid, and is only divested of such lien by the payment to the city treasurer of the purchase money, including costs herein provided for, with interest thereon at the rate of one per centum per month from the date of sale."

"Subdivision i. If the property is not redeemed within the time allowed by subdivision (g) hereof for

its redemption, the said treasurer, or his successor in office, upon application of the purchaser or his assignee, must make to said purchaser or his assignee, a deed to the property. . . . ''

Taking these two sections together and the general right of subrogation, we are of the opinion that when defendant Mosher redeemed from the sale to Fox, the property was still subject to the lien acquired by Hughes under the first sale, and that such lien had passed to Fox by reason of his redemption.

The question as to what, if any, rights Fox gained by his redemption from the third sale to Skousen is a little more difficult. We think, however, that the principles of equity would also require that we hold there was a subrogation in that case. It is true, of course, that a mere volunteer, who has no rights to protect, may not claim the right of subrogation, for one who, having no interest to protect, without any legal or moral obligation to pay, and without an agreement for subrogation or an assignment of the debt, pays the debt of another, is not entitled to subrogation, the payment in his case absolutely extinguishing the debt. But when one, to protect his own interest, pays a debt which he honestly believes must be paid to accomplish that purpose, we think, by the fundamental principles of equity, he cannot be held to be a mere volunteer, even though it may afterwards appear the payment was unnecessary: In the case at bar, since Fox's right under his own original purchase had been extinguished by the redemption of Mosher, and in view of the fact that he held Hughes' interest as a redemptioner and not as a purchaser, a question as to whether his rights were superior to those of Skousen under the third sale might have arisen. Such being the case, we think that he was justified in redeeming

from the Skousen sale for the protection of his rights under the Hughes sale, even though it might ultimately be determined as a matter of law that such redemption was not necessary. Defendant Mosher is not equitably in a position to complain of this, for she is not injured in the eyes of the law because she is compelled to pay the amount of the assessments levied on the property to B rather than to A in order to release it from the Skousen lien.

We hold, therefore, that Fox was subrogated to the right of Hughes and Skousen in so far as he had redeemed from the respective sales. It is urged, however, that the record shows that Fox did not himself redeem from the Skousen sale, but that the redemption was made by plaintiff at a time when he had no interest in the premises and was thus a mere volunteer. If this be true, of course the Skousen lien was extinguished when the redemption was made. We think, however, that the part of the record cited by defendant to establish this, while susceptible of the interpretation that plaintiff instead of Fox did pay the Skousen claim, is not conclusive upon that point. The trial court found that Fox himself paid the Skousen claim, and in view of the whole record we cannot say that the finding was unjustified.

But, says defendant, even assuming that Fox was subrogated to the rights of both Skousen and Hughes, his claim was not the subject of an assignment. We think that under our decisions the contention cannot be sustained. The right of Fox was certainly a chose in action with survivorship, and in the absence of some express reason to the contrary these choses are always assignable. *Deatsch* v. *Fairfield,* 27 Ariz. 387, 233 Pac. 887, 38 A. L. R. 651; *United Verde Extension Min. Co.* v. *Ralston,* 37 Ariz. 554, 296 Pac. 262. Nor was there merit in the assign-

ment that the amount of the judgment included a greater sum than is permitted by law. It is also objected that there was no proof offered that the original assessments on which the entire proceedings were based were made according to law. Paragraph 1966, Revised Statutes of Arizona 1913 (Civ. Code), reads as follows:

" . . . The said warrant, assessment and diagram, with the affidavit of demand and non-payment, shall be held *prima facie* evidence of the regularity and correctness of the assessment, and of the prior proceedings and acts of the superintendent of streets and legislative body, upon which said warrant, assessment and diagram, are based, and like evidence of the right of the plaintiff to recover in the action. . . . "

This applies to the Hughes sale, and a similar provision appears in the act of 1919, which covers the Fox and Skousen sales. Under these provisions a proof of the warrant, assessment, diagram, and affidavit of demand and nonpayment makes a *prima facie* case of the validity of the assessment. *Ainsworth* v. *Arizona Asphalt Paving Co.,* 18 Ariz. 242, 158 Pac. 428. This proof was made and not questioned by defendant.

We come then to the assignment which is most strongly stressed by defendant both in her brief and on oral argument. It is that the statute of limitations had run against the action. This requires a consideration of what the rights and limitations of plaintiff were under his subrogation to Hughes and Skousen. The general rule is that a person having an interest in property who pays off an encumbrance in order to protect his interest is subrogated to the rights and limitations of the person paid. *Porter* v. *Title Guaranty & Surety Co.,* 17 Idaho 364, 106 Pac. 299, 27 L. R. A. (N. S.) 111; *Hubbard* v. *Le Barron,* 110 Iowa 443, 81 N. W. 681; *Cole* v. *Malcolm,* 66 N. Y.

363; *Poluckie v. Wegenke et al.*, 137 Wis. 433, 119 N. W. 188. Upon the general principles of equity he should have every right to enforce his claim which the original party had, but upon the same principles he is not entitled to any new or additional rights. He merely steps into the shoes of the person to whose rights he is subrogated so far as a remedy is concerned. Plaintiff in this case was subrogated to the rights of Hughes and Skousen. What rights did they have and what remedies might they use to enforce them? Paving assessments are creatures of the statute and are governed by the terms of the statute creating them. When Hughes purchased the property at the first sale, the bonds issued against it for the assessment were extinguished, and the rights which he acquired by the purchase are clearly and explicitly set forth in subdivisions (f) and (i), paragraph 1973, *supra*. He acquired a lien upon the property which could only be divested by payment of the assessment and the penalties. But the statute gave him one and only one method of affirmatively enforcing such lien, being by an application for a deed in accordance with the terms of the statute, and the statute does not fix a time when that right expires. Since this remedy does not require a suit, and general statutes of limitations apply only to remedies by suits, such remedy still is effective. But, it is claimed, this is a suit for a different remedy, and such remedy is barred by the statute. We consider, therefore, the nature of the relief sought, and the question of plaintiff's right to maintain this suit at all immediately arises. It is the general rule that when a statute which creates a lien gives a specific method for enforcing it which is complete and adequate, such remedy is exclusive, and this is particularly true with tax liens. *Kansas City* v. *Field*, 285

Mo. 253, 226 S. W. 27; *City of Sapulpa* v. *Land,* 101 Okl. 22, 223 Pac. 640, 35 A. L. R. 872. Certainly neither Hughes nor Skousen could by bringing an ordinary foreclosure suit at any time after the lien given in subdivision (f), *supra,* had attached, cause the property to be sold at sheriff's sale under execution, and secure a deed in this manner. Indeed, this is admitted by appellee, but it is apparently his contention that where an independent ground of equity jurisdiction exists, the existence of an adequate legal remedy does not prevent equity from giving complete relief by ordering a judicial sale of property subject to a statutory lien. The argument is based on the fact that subrogation is of itself an equitable remedy and is administered on those principles. As a general proposition, this is, of course, true, but we think that when applied to the facts in this case equity does not require, nor indeed permit, the action taken by appellee. In states where equitable relief was administered by different courts, or at least in different actions from legal relief, the rule invoked by plaintiff was often necessary to prevent confusion and a multiplicity of actions, but in states like ours, where there is but one form of action, in which any relief necessary can and will be granted, while it is possible cases may arise which require an application of the rule, its operation should be greatly limited. Particularly is this true when it appears the legislative authority has clearly indicated a single complete and adequate remedy. As we have stated, the doctrine of subrogation taken in its most liberal sense cannot give any greater rights to the subrogee than are held by the person to whose rights he is subrogated. Since the only rights of Hughes and Skousen were to secure a deed to the property in question by complying with the statute, we think equity should inter-

vene only so far as it may be necessary to establish plaintiff's rights to the deed as the subrogee of the former. As the present action is based entirely on the theory that plaintiff was foreclosing a statutory lien in the ordinary manner provided for the foreclosure of general liens, and not on an attempt to secure a deed in the statutory manner, the court lacked jurisdiction to consider the case at all.

The judgment of the superior court of Maricopa county is reversed and the case remanded, with instructions to dismiss the action.

McALISTER and ROSS, JJ., concur.