594 P.2d 538

George A. HUEG, Lucille Hueg, Thomas Daniel McGowan, Betty J. McGowan, Richard R. Hand, LaRose K. Hand, Mary Bango, Phillip Wilson, Kathy R. Wilson, Peter Hayenga, Joann Hayenga, Billy Jo Hancock, Debbie Hancock, Herrmann Klopping, Peggy Klopping, Henry G. Sundermier, Evelyn Sundermier, Appellants,

v.

SUNBURST FARMS (GLENDALE) MUTUAL WATER AND AGRICULTURAL COMPANY, an Arizona Corporation, Mutual Management Services, Inc., an Arizona Corporation, Appellees.

No. 1 CA–CIV 3738.

Court of Appeals of Arizona, Division 1, Department A.

March 6, 1979.

Rehearing Denied April 18, 1979.

Review Denied May 8, 1979.

Derickson, Kemper & Henze by James Hamilton Kemper, Phoenix, for appellants.

Jerold Kaplan, Phoenix, for appellees.

## OPINION

DONOFRIO, Judge.

Appellants who were plaintiffs below brought a declaratory judgment against ap-

pellee Sunburst Farms (Glendale) Mutual Water and Agricultural Company, a corporation, and Mutual Management Services, Inc., a corporation,[1] seeking to have Article III,[2] which is incorporated into each of two identical instruments entitled, "Declaration of Covenants, Conditions and Restrictions," each of which was filed and recorded April 24, 1972, against the properties in two sub-

1. Defendant Mutual Management Services, Inc. was the collection agency for the Mutual Water and Agricultural Company.

2.
### ARTICLE III
#### ASSOCIATION MEMBERSHIP

The record owner of equitable title (or legal title if equitable title has merged) of any parcel or parcels of real property located in the SUNBURST FARMS development shall automatically become a member of the Association, and shall remain a member of the Association until such time as his ownership ceases for any reason at which time his membership in said Association shall automatically cease. Ownership of a parcel shall be the sole qualification and criteria for membership. The foregoing is not intended to include persons or entities who hold an interest merely as security for the performance of an obligation.

A membership in the Association shall not be transferred, pledged or alienated in any way. Upon the sale, or other transfer of a parcel, the owner's membership in the Association shall automatically be cancelled and new membership certificates shall be issued to subsequent owners pursuant to the Articles and Bylaws of the Association. Any attempt to make a prohibited transfer is void and will not be reflected upon the books and records of the Association.

The record owner of equitable title (or legal title if equitable title has merged) of each unit shall be entitled to one membership in the Association, for himself and his family residing in the unit, which membership shall be subject to all of the provisions of the Association's Articles of Incorporation, Bylaws, Resolutions and these Restrictions, as now in effect or duly adopted and amended.

Membership in this Association is for the purpose of supplying irrigation water and agricultural tillage service to its members at the most economical rates. Membership further is for the purpose of each member maintaining his property in such a manner as to not depreciate the value of the overall project. Therefore, each member agrees to be bound by the Articles and Bylaws of the corporation and acknowledges that the Board of Directors may fix such rates for the delivery of irrigation water and such rates for the tillage of the project lands as to properly maintain this service. In the event any member fails or refuses to maintain his property used in conjunction

with the transportation and delivery of irrigation water, to the standard as required by the Board of Directors of this Association, then the Board may have the absolute right to improve the member's property used in conjunction with the transportation and delivery of irrigation water, in such a way as to maintain the Association's standards. The cost of such improvements shall be charged on the regular rates against such member.

No member may exempt himself from liability or charges fixed by the Board of Directors for the delivery of irrigation water or for charges for the tillage of the project lands or for other charges in connection therewith which the Board of Directors may fix by his waiver of the use or enjoyment of irrigation or other service or services provided by the Association or by the member's abandonment of his unit.

Each member further agrees that the above-mentioned charges, if not paid within the time fixed for payment by the Board of Directors, shall be delinquent and shall become a lien upon said member's lot and shall continue to be such lien until fully paid. Such charges shall bear interest from the date of delinquency at the rate of five percent (5%) per annum. The lien referred to in this Article III shall be subordinate to the lien of any first mortgagee. The amount of principal and interest owed by each member to the Association shall be a debt, and shall be collectible by any lawful procedure allowed by the laws of the State of Arizona.

Each member, by his acceptance of a deed to a lot, or by his lease of a lot, hereby expressly vests in the Association or its agents, the right and power to bring all actions against such member for the collection of such charges and to enforce the aforesaid lien by all methods available for the enforcement of such liens and such member hereby expressly grants to the Association the power of sale in connection with said lien.

In the event the Association employs an attorney or attorneys to enforce said lien or the collection of any amounts due pursuant to this Article, the member, members, and parties against whom the action is brought shall pay all attorneys' fees and costs thereby incurred by the Association in the event the Association prevails in any such action.

divisions, Sunburst Farms 19 and Sunburst Farms 20, declared void, or in the alternative, declared revoked by a petition of the majority of property owners in each of the two subdivisions. The matter was tried to the court which, without making any findings of fact, denied plaintiffs all relief sought. This appeal followed.

Plaintiffs are the owners of homes in the Glendale area of Maricopa County. All of their homes are located within one of two subdivisions, either Sunburst Farms 19 or Sunburst Farms 20. All of these lands are subject to a recorded covenant contained in each of the above-mentioned declarations of covenants and restrictions, which covenant required them to pay charges and assessments placed on the land by the defendants Sunburst Farms (Glendale) Mutual Water and Agricultural Company. Sunburst Farms (Glendale) Mutual Water and Agricultural Company is a non-profit corporation that was organized to provide irrigation water and agricultural utility service to lots in the Sunburst Farms subdivisions. Each of the two subdivisions, by a majority of their lot owners, undertook to free themselves of this covenant.

Subdivision 19 contains 40 units. When the subdivision was created a "Declaration of Covenants, Conditions and Restrictions" (hereinafter the Declaration or Declarations) was recorded. By virtue of Article III of the Declaration all persons owning homes in the subdivision were required to become members of the Sunburst Farms (Glendale) Mutual Water and Agricultural Company whether or not they took water or used the agricultural utility services provided by the water company. The Declaration also contains a provision in Article IV, Section 3 whereby the declaration itself may be amended or revoked. The pertinent part of Article IV, Section 3 reads:

"The foregoing restrictions and covenant run with the land and shall be binding upon all parties and all persons claiming under them until January 1, 1998, unless otherwise amended or revoked by vote of a majority of the then owners of lots in Sunburst Farms Nineteen."

In January of 1975, two of the owners from subdivision 19 prepared a petition by which they sought to have the Declaration amended to do away with the mandatory membership in the water company. The petition read as follows:

"We the undersigned being the majority of the forty (40) homeowners in Sunburst Farms Nineteen as required by Article IV, section 3, of the Declaration of Covenants, Conditions and Restrictions recorded against Sunburst Farms Nineteen vote to revoke the restriction (sic) and covenants that run with the land which relieves the homeowners of Sunburst Farms Nineteen from any legal and financial responsibility to the Sunburst Farms (Glendale) Mutual Water and Agricultural Company."

These two owners then circulated this petition amongst the lot owners in the subdivision, and purportedly asked the lot owners if they were willing to vote to have the "restriction removed from their property." The petition reportedly was signed by 23 of the 40 units in subdivision 19, and was recorded on January 7, 1975.

With regard to subdivision 20, there also was filed a declaration of covenants and restrictions, which is identical to the declaration filed in connection with subdivision 19. A petition similar to that circulated in subdivision 19 also was circulated amongst the lot owners in subdivision 20, and allegedly was signed by 21 units of that subdivision. Essentially the same procedures for getting the signatures and recording the petition that were employed in regard to subdivision 19 were used in regard to subdivision 20.

The record before this Court shows that the parties differ as to what was said by the circulators of the petitions at the time of the gathering of the signatures and as to what was intended by some of the signers in signing the petitions. Specifically, the record reveals that four of the 23 signers of the petition from subdivision 19 and three of the 21 signers of the petition from subdivision 20 stated unequivocally that they did not intend to revoke the declarations, cove-

nants and conditions, but were misled into signing the petition submitted by plaintiffs. On the basis of this evidence, appellees in the trial court below (as noted in the pre-trial statement) raised as a factual issue the validity of the signatures on the above-mentioned petitions. The record before us does not reveal any other evidence regarding the validity of the signatures.

Despite the petitions in both subdivisions the water company continued to bill the owners of the charges and assessments and when these were not paid, later filed and recorded liens on the home of each owner for these charges and assessments. Thereafter, appellants filed this declaratory judgment action contending first, that the declarations of covenants and restrictions were invalid; second, that plaintiffs had properly revoked the covenants requiring them to maintain membership in the water company; and third, that the liens were invalid because they were not provided for by statute. After trial to the court, the trial court entered judgment against plaintiffs. Findings of fact and conclusions of law were not required. We affirm the trial court's judgment.

■ On appeal, plaintiff-owners, Richard R. and LaRose K. Hand and Mary Bango, contend that since they signed agreements to purchase their units in subdivision 19 prior to the recording of the above-mentioned declaration, they are not bound by the covenants and restrictions contained therein. All other plaintiffs signed contracts to purchase their lots after the recording of the Declaration which purportedly applies to their subdivision. However, since the Hand and Bango deeds were accepted and recorded in October and September of 1972, long after the deed restrictions were recorded on April 24, 1972, we think that plaintiffs Hand and Bango were not relieved of the covenants and restrictions by the fact that their purchase agreements predated the recordings of the Declaration.

■■ It is settled that the acceptance of a deed tendered in performance of an agreement to convey merges the written or oral agreement to convey in the deed, the agreement to convey being discharged or modified as indicated by the deed, and thereafter the deed regulates the rights and liabilities of the parties. 77 Am.Jur.2d Vendor and Purchaser § 290, at 448–449; 38 A.L.R.2d 1315, § 3 (1954). As a general rule, the acceptance by the grantee of a deed containing covenants to perform is binding upon him. *Murphey v. Gray*, 84 Ariz. 299, 327 P.2d 751 (1958); 20 Am.Jur.2d Covenants, Conditions and Restrictions § 2 at 576.

In view of the above, the rights and obligations of plaintiffs Hand and Bango with regard to their respective purchases are controlled by the terms of their respective deeds, not by the terms of their purchase agreements. Since plaintiffs Hand and Bango accepted deeds, which expressly made their respective conveyances subject to the covenants and restrictions contained in the declaration recorded prior thereto, we hold that these two properties are bound by the covenants and restrictions and stand in the same position as the other properties in subdivisions 19 and 20.

■ The issue that the covenants and restrictions contained in the Declarations are invalid *ab initio* is not discussed in the briefs. We need only mention in support of its legality that the general law is that the owners of a subdivision may impose restrictions by agreement and may likewise provide for the modification or extinguishment. See Thompson on Real Property, 1962 Replacement § 3173, page 202. Furthermore, although no Arizona decision is directly on point, the overwhelming majority of American Jurisdictions enforce with equal vigor both affirmative covenants and negative covenants. See cases collected in notes, 41 A.L.R. 1363 (1926), 102 A.L.R. 781 (1936), 118 A.L.R. 982 (1939), 68 A.L.R.2d 1022 (1959); *Adaman Mutual Water Company v. United States*, 278 F.2d 842, (9th Cir. 1960).

■ As to the issue involving the validity of the liens, we agree with appellees that, under Arizona law, liens need not necessari-

ly be provided for by statute, since an equitable lien may arise from express contract where the parties indicate an intent to charge or appropriate particular property as security for an obligation. *Kalmanoff v. Weitz*, 8 Ariz.App. 171, 172, 444 P.2d 728 (1968). In this declaratory judgment action, however, no relief is being sought by appellees to enforce the lien, and we therefore do not pass upon any issue with respect to the enforcement of the liens.

We now discuss the remaining issue determinative of this appeal; namely, whether the petition which was circulated in each of the subdivisions effectively revoked the restrictions and covenants which were recorded on April 24, 1972. We believe not.

■ Appellees contend that the petitions which were circulated in each of the subdivisions do not constitute a "vote" within the meaning of Article IV, § 3 of the Declarations, and that the petitions in fact do not contain the valid signatures of a majority of the lot owners in each subdivision and thus were not effective to revoke the restrictions and covenants as to each subdivision.

Certainly a vote may be taken in a variety of ways, and in this matter Article IV, § 3 is completely silent in regard to the manner in which the vote of the lot owners in each subdivision may be taken. We believe the manner in which the vote was taken was proper. Furthermore, the petitions plainly state that the "undersigned * * * *vote* to revoke the restriction (sic) and covenants." (Emphasis Supplied.) Thus, we think that the signatures on each of the petitions could have constituted a "vote" sufficient to revoke the restrictions and covenants pursuant to Article IV, § 3 of the Declarations.

We cannot say, however, that the signatures on the petitions, considering the evidence of some of the signers, infra, were sufficient to revoke the restrictions and covenants as to subdivisions 19 and 20.

■ It is established that where the trial court was not requested to and did not make findings of fact or conclusions of law,

the reviewing court must view the evidence and reasonable inferences therefrom in the light most favorable to the party in whose favor the judgment was rendered, and if there is any evidence to support the judgment of the trial court, it must be affirmed. *In Re Appeal In Maricopa County, Juvenile Action No. J–75482*, 111 Ariz. 588, 536 P.2d 197 (1975); *Jerger v. Rubin*, 106 Ariz. 114, 471 P.2d 726 (1970). The reviewing court also must assume from any judgment the findings necessary to sustain it, if such additional findings do not conflict with express findings and are reasonably supported by the evidence. *Wippman v. Rowe*, 24 Ariz.App. 522, 540 P.2d 141 (1975); *King Realty, Inc. v. Grantwood Cemeteries, Inc.*, 4 Ariz.App. 76, 417 P.2d 710 (1966). In the instant case, the trial court was not requested to and did not make any express findings. On the record before us, we think there is reasonable evidence which would sustain a factual finding that the petitions do not contain the valid signatures of a majority of the lot owners in each subdivision, which finding would support the trial court's judgment in favor of appellees.

As previously noted, the record shows that four of the 23 signers of the petition from subdivision 19 and three of the 21 signers of the petition from subdivision 20 stated unequivocally that they did not intend to revoke the declarations, covenants and conditions, and were misled into signing the petitions submitted by plaintiffs. Since this evidence reasonably would support a factual finding that each of the petitions does not contain the valid signatures of a *majority* of lot owners in each subdivision, we must assume from the judgment that the trial court so found. On the basis of this implied finding, we conclude that the signatures on each petition do not constitute a "majority vote" of the lot owners in each subdivision as required under Article IV, § 3 of the Declarations and that therefore the petitions did not revoke the restrictions and covenants as to subdivisions 19 and 20.

Appellees have also contended that revocation or amendment pursuant to Article

IV, § 3 of the Declarations is a corporate matter and must be carried out in accordance with the Articles of Incorporation and the By-laws of the Sunburst Farms (Glendale) Mutual Water and Agricultural Company as would any regular corporate business. Inasmuch as we have determined this appeal on the issue that there was a lack of a majority vote of the property owners, we need not pass upon this question.[3]

In light of the foregoing, the judgment of the trial court is affirmed.

FROEB, J., concurs.

HAIRE, Judge, specially concurring.

I concur in the result only.

---

**3.** Department B of this Court in 1 CA–CIV 4345, *David P. and Josephine Duffy, Pat and Mary McGee, William and Wanda Mir v. Sunburst Farms East Mutual Water & Agricultural* *Company, Inc.*, (App.) [Filed February 8, 1979] has passed upon an issue which is similar to the one raised in this contention.