791 P.2d 1086

**TITLE INSURANCE COMPANY OF MINNESOTA, a Minnesota corporation, Plaintiff–Appellant,**

v.

**COSTAIN ARIZONA, INC., an Arizona corporation, Defendant–Appellee.**

No. 1 CA–CV 88–534.

Court of Appeals of Arizona, Division 1, Department C.

May 8, 1990.

Cruse & Firetag by Daniel A. Bock, Keith B. Forsyth and Jules I. Firetag, Phoenix, for plaintiff-appellant.

Gust, Rosenfeld & Henderson by Richard A. Segal, Phoenix, for defendant-appellee.

## OPINION

CONTRERAS, Presiding Judge.

Appellant Title Insurance Company of Minnesota (hereinafter "TICOM") provided title insurance to Talley Realty Development, Inc. (hereinafter "Talley"), in its purchase of a large parcel of real property from Costain Arizona, Inc. (hereinafter "Costain"). Talley subsequently recovered a significant sum of money from TICOM under the title insurance policy because Talley did not receive title to a 15–foot strip of land that was included in the purchase agreement. TICOM, in searching title, had failed to note that Costain no longer owned any interest in the strip of property. After paying Talley's claim, TICOM sought reimbursement from Costain, which, pursuant to the purchase agreement, had received payment for the strip of property. Three theories for recovery were asserted: (1) breach of warranty of title as Talley's subrogee, (2) indemnity, and (3) unjust enrichment. This appeal was brought from entry of the trial court's judgment denying relief under any of TICOM's theories. We reverse the ruling of the trial court and remand the case for entry of judgment for TICOM on its breach of warranty claim.

## FACTS [1]

In May of 1984, Costain and Talley executed an agreement for Talley to purchase

---

1. This case was tried to the court on stipulated facts, predominantly comprised of documentary evidence.

a large parcel of property through use of a subdivision trust arrangement in which TICOM would serve as trustee (Trust No. 2267). The property Costain agreed to sell to Talley was part of a larger parcel Costain was purchasing from the Church of Jesus Christ of Latter Day Saints pursuant to a previously executed subdivision trust agreement (Trust No. 2136) which also named TICOM as trustee. As trustee under both subdivision trusts, TICOM held title to the property for the use and benefit of the beneficiaries, the seller and buyer, as set forth by the terms of the respective trust agreements.

The senior trust agreement (Trust No. 2136) described the general duties and powers of the trustee, stating that the trustee holds title to the property for the purpose of "deeding, selling, conveying, demising, receiving payment for and otherwise handling the property upon such terms and conditions and for such prices as Trustee may be instructed in writing so to do by [Costain]. . . ." The trust agreement also authorized the trustee to dedicate roads, alleys or easements to public use and to convey the portion so dedicated to the proper county or city upon instruction from Costain.

The senior trust provided that Costain would be allowed to direct the trustee to sell all the property or any subdivided lot or lots through escrow to be established at TICOM. Significantly, it also specified that the trustee would be entitled to rely on information provided by Costain regarding the acreage upon which to determine the purchase price of any portion of the property to be released in a subsequent sale.

Under the terms of the purchase agreement between Costain and Talley, the sales price for Talley's purchase was initially computed on the basis of a specified number of acres, but the price was to be adjusted at the rate of $1.80 per square foot after Costain delivered a survey to Talley show-

ing the exact amount of acreage being conveyed, excluding existing dedicated roadways. The agreement also provided that Costain would warrant title to Talley as follows:

> Seller is the owner of and has good and marketable Second Beneficial Interest to the Subject Property, free and clear of any and all claims, taxes, assessments, reservations in patents, easements, right-of-ways, encumbrances, liens, covenants, conditions, restrictions, obligations and liabilities other than those specifically set forth herein or in the Preliminary Title Report approved by Buyer or shown in a supplement or amendment to these Instructions signed by Buyer and Seller.

The agreement further provided that Costain would cause TICOM, in its separate role as escrow agent, to issue and deliver to Talley its standard coverage title insurance policy insuring Talley's interest in the property subject to those exceptions set forth in the preliminary title report which Talley agreed to accept.

TICOM's preliminary title report failed to exclude a 55–foot strip of property on the southern edge of the parcel, which had been dedicated to the City of Chandler,[2] although it did uncover the fact that an easement in a 40–foot portion of that same strip of property had previously been granted. As a result, the title policy issued thereafter by TICOM guaranteed that the property being conveyed to Talley included an unencumbered 15–foot strip in which Costain actually held no interest.

The engineering firm hired by Costain to survey the property to determine the exact amount of acreage being sold also improperly included this same 15–foot strip of property in its survey. Hence, when the purchase price was recalculated on the basis of the exact acreage being sold, Talley had paid Costain an additional $62,334 for land to which it did not receive title.[3] Tal-

---

2. At Costain's request, and pursuant to the terms of the senior trust agreement, TICOM had quitclaimed this strip to the City of Chandler for roadways in April of 1983.

3. The amount Talley originally demanded and received from TICOM was $70,934.13. While Costain maintains that it has no liability to TICOM, it separately argued prior to trial that Talley used an incorrect acreage figure in calcu-

ley presented its claim to TICOM for this amount under the title insurance policy issued by TICOM. Thereafter, TICOM paid the claim and then sought reimbursement from Costain. This appeal followed the trial court's denial of TICOM's claim for recovery from Costain.

## DISCUSSION

TICOM argues that after discharging its liability under the title insurance policy by paying Talley for its overpayment for the property it did not receive, it became subrogated to the rights Talley would have had against Costain for breach of warranty of title. TICOM's policy contained a subrogation clause which provided in relevant part:

Whenever the Company [TICOM] shall have settled a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant. The Company shall be subrogated to and be entitled to all rights and remedies which such insured claimant would have had against any person or property in respect to such claim had this policy not been issued....

■ It is well settled that where an insured contracts with a third party requiring the latter to pay for loss or damage to insured property, the insurer, upon payment of the loss, is subrogated to the rights of the insured under the contract. *Highlands Insurance Company v. Fischer*, 122 Ariz. 394, 396, 595 P.2d 186, 188 (App.1979); *Couch on Insurance (Second)* § 61:144 (1966). Moreover, an insurer may be entitled to subrogation under proper circumstances, not only when its contract with its insured so provides, but also through the equitable doctrine of subrogation, even in the absence of express provision. *See Mosher v. Conway*, 45 Ariz. 463, 468, 46 P.2d 110, 112 (1935), *cert. denied*, 305 U.S. 599, 59 S.Ct. 77, 83 L.Ed. 380 (1938); *Lawyers Title Insurance Corporation v. Capp*, 174 Ind.App. 633, 636, 369 N.E.2d 672, 674 (1977).

■ We conclude that if Talley had the right to maintain a claim for breach of warranty against Costain, TICOM was subrogated to that right. We note that courts have found title insurers subrogated to the rights their insured may have had against the seller despite the fact that the title insurer was negligent in its examination of title. *See, e.g., Transamerica Title Insurance Company v. Johnson*, 103 Wash.2d 409, 693 P.2d 697 (1985); *American Title Insurance Company v. Coakley*, 419 So.2d 816 (Fla.App.1982); *Harvey v. J & H Holdings, Inc.*, 310 So.2d 371 (Fla.App.1975); *Douberley v. Angelini*, 240 So.2d 98 (Fla. App.1970); *Wolff v. Commercial Standard Insurance Company*, 345 S.W.2d 565 (Tex.App.1961).

In *Transamerica Title Insurance Company v. Johnson*, 103 Wash.2d 409, 693 P.2d 697 (1985), a title company failed to discover a sewer assessment lien. The title company paid the assessment lien and sought recovery from the seller who warranted title. The seller argued that since it had paid the premium to provide insurance for the buyer, the insurance company owed duties to it of searching and disclosing title defects in addition to the duties it owed under the policy to the insured buyer. The court noted a split of authority as to whether a title insurer owes duties extending to other than the insured. The court concluded, however, that even if it were to join with the jurisdictions that recognize a duty on the part of the title insurance company extending to persons other than the insured, liability would not be imposed where it cannot be shown that the noninsured relied upon the preliminary commitment or other representation of the title company and that the reliance was foreseeable. In the case before it, the court found no showing of reliance, damage or an expectation of a search and disclosure to the seller. The seller knew of the assessment liens long before the title insurer issued a preliminary commitment.

In *Harvey v. J & H Holdings, Inc.*, 310 So.2d 371 (Fla.App.1975), the title insurer

lating the overpayment. By the time of trial, Costain and TICOM agreed that the price for the amount of acreage involved was $62,334.00 and

TICOM was limited to that figure in seeking reimbursement from Costain.

failed to note that the seller had granted an easement over the property being sold to an abutting property owner and that the easement had been properly recorded. The title company paid damages to the buyer and sought recovery from the seller. In *Harvey*, the title insurer provided insurance both to the buyer and to the seller. Unquestionably, the seller had knowledge of the easement and the seller's policy did not insure against loss by reason of defects created by or known to the seller. Under these circumstances, the court found no reason for the encumbrance to be excluded from the covenant made by the seller to convey clear title.

In *Wolff v. Commercial Standard Insurance Company*, 345 S.W.2d 565 (Tex. App.1961), the title company failed to note that a lien on property being sold had not been released. The title company discharged the lien and sought to recover as the subrogee of its insured from the seller who warranted title. The court found no merit to the seller's contention that the title company was estopped to assert a claim against the seller because its examination of the title to the property failed to disclose the lien. The court noted that the title company was not responsible for the encumbrance on the property and that it had existed before the seller acquired the property. The court found that even though the seller paid for the title policy, the title company owed the seller no duty to point out the encumbrance. The policy was issued only to the buyer, and the only duty imposed by the policy was to protect the insured.

Costain cites two cases in which courts refused to allow a title insurer to be subrogated to the right of its insured to sue the seller for breach of warranty of title under circumstances in which the title insurer committed negligence in conducting its title search. *See Coy v. Raabe*, 69 Wash.2d 346, 418 P.2d 728 (1966); *Lawyers Title Insurance Company v. Capp*, 174 Ind. App. 633, 369 N.E.2d 672 (1977). We note, however, that in *Coy v. Raabe*, the facts indicated that all parties relied upon the title reports. The court found that under those circumstances it would be inequitable to allow subrogation on the part of the title insurer. In *Lawyers Title Insurance Company v. Capp*, the title insurer relied solely on the equitable doctrine of subrogation rather than on any right of subrogation included in the policy of insurance. Because the equities were conflicting and the court was not presented with pertinent language from the policy of insurance, it found no reason to overturn the trial court's ruling against the title insurer. We find these cases to be readily distinguishable from the case before us.

In this case, the policy of insurance clearly granted a right of subrogation to TICOM. In addition, no contention is made that TICOM was to provide insurance for anyone other than the buyer. Division Two of this court has held that a title company's duties in inspecting records and preparing title reports are not limited to contract duties and that it may be held liable in tort. *Moore v. Title Insurance Company of Minnesota*, 148 Ariz. 408, 412, 714 P.2d 1303, 1307 (App.1985). However, even if we were to conclude that TICOM owed a tort duty to Costain of searching and disclosing, the record contains no evidence that Costain relied to its detriment on TICOM's failure to disclose that it no longer held title to the 15–foot strip of property. Costain did not choose a set purchase price upon which it would suffer a loss if it were established that it had conveyed less property than it agreed to convey. Instead, the price was to be calculated upon the actual amount of property sold. Costain clearly received a windfall when the purchase price was based upon computation that included additional acreage which Costain did not own. It is only this windfall that Costain is asked to relinquish. TICOM's negligence caused no actual loss to Costain. Moreover, Costain knew or should have known that it no longer owned the strip of property since it previously instructed the trustee to convey the same strip to the City of Chandler. In view of the foregoing, we conclude that TICOM is subrogated to Talley's claim against Costain for breach of warranty provided that Talley was TICOM's insured and Costain executed a warranty deed.

■ If TICOM, in acting as escrow agent and title insurer, had strictly followed the escrow instructions calling for it to issue the title policy to Talley, and if it had issued a warranty deed from Costain to Talley containing the warranties of title Costain gave in the purchase agreement, TICOM clearly would have been subrogated to Talley's rights to sue Costain for breach of warranty. When TICOM issued the insurance policy, however, it listed as the insured not Talley but TICOM in its capacity as trustee of the senior trust. Moreover, instead of issuing a warranty deed from Costain to Talley, TICOM made the conveyance from TICOM as trustee in Trust No. 2136 to TICOM as trustee in Trust No. 2267. Unquestionably, this was done because of the manner in which the subdivision trusts were established with the trustee holding title for the beneficiaries. Under these circumstances, the trial court concluded that TICOM could not be subrogated on a claim against Costain for breach of warranty both because Talley was not an insured and because Costain made no warranty of title to Talley under the deed that was conveyed.[4]

We conclude that the trial court erred in finding that Talley was not the insured. The parties' contract and escrow instructions clearly provided that Talley was to be the insured under TICOM's title insurance policy. The premium was paid. The issuance of the policy naming TICOM, trustee in Trust No. 2136, as the insured instead of Talley was an error which Talley was entitled to have corrected. A letter submitted into evidence indicates that the policy was in fact corrected to show Talley as the insured. This fact was not disputed. Consequently, we conclude that Talley was the insured under TICOM's policy.

■ The trial court correctly observed that the deed conveying the property did not contain a warranty of title from Costain, but only from TICOM as trustee in

Trust No. 2136. The doctrine of subrogation taken in its most liberal sense cannot give any greater rights to the subrogee than are held by the person to whose rights he is subrogated. *Mosher*, 45 Ariz. at 474, 46 P.2d at 114.

■ Ordinarily, express or implied provisions in a contract with respect to the title of land to be conveyed are held to be merged in an accepted deed of the land, and, as a result, evidence of such contractual provisions is held to be inadmissible to vary or contradict the deed with respect to title. *Hueg v. Sunburst Farms (Glendale) Mutual Water and Agricultural Company*, 122 Ariz. 284, 288, 594 P.2d 538, 542 (App.1979); Annot., 38 A.L.R.2d 1310, § 9 (1954). Even though Costain expressly agreed in the sales contract to warrant title to Talley, Costain asks us to apply the doctrine of merger to allow it to keep the windfall payment it received for the property it did not convey. TICOM argues that to do so would ignore the realities of what the parties intended in this case.

It is well settled that the doctrine of merger has several exceptions. As the Arizona Supreme Court stated in *Vaughey v. Thompson*, 95 Ariz. 139, 142, 387 P.2d 1019, 1021 (1963):

... In addition to fraud and mistake, a well recognized qualification to merger is that the intent of the parties controls. The rule of merger does not apply to those provisions of the antecedent contract which the parties do not intend to be incorporated in the deed, or which are not necessarily performed by the delivery of the executed conveyance. *Blake–McFall Co. v. Wilson*, 98 Or. 626, 193 P. 902, 14 A.L.R. 1275 (1920); 55 Am.Jur. 757, *Vendor and Purchaser* § 328. The question whether such stipulations are merged in the deed depends upon whether the parties intended a waiver, surrender or other discharge—whether the parties intended the acceptance of the deed

---

4. The trial court stated as follows in its minute entry of May 23, 1988:

The title insurance policy insured the warranty of title made by transferor in the deed of conveyance to transferee.

The transferor in the deed was Ticom, Trustee under Trust 2136 to transferee, Ticom, Trustee under Trust 2267. Costain made no warranties of title to Talley.

Notwithstanding Talley was not an insured, insurer paid Talley and seeks to be subrogated to Talley's rifhts [sic] under the title insurance policy. Talley had no rights under said policy.

as full performance of the entire preliminary contract. *Linbrook Realty Corp. v. Rogers,* 158 Va. 181, 163 S.E. 346, 84 A.L.R. 1035 (1932); *Duncan v. McAdams,* 222 Ark. 143, 257 S.W.2d 568, 38 A.L.R.2d 1307 (1953).

Under the circumstances presented in this case, the deed was drafted as it was, conveying warranty deed from one trustee to the other, solely because of the necessity of handling the transaction through the cumbersome use of senior and junior subdivision trusts. We find no evidence that any party intended to relieve Costain of its obligation under the sales contract to warrant title to the property. We conclude that it would be inequitable to apply the doctrine of merger to allow Costain to keep the windfall it received. Accordingly, we further conclude that because TICOM paid Talley under the insurance policy for the overage Talley paid to Costain for property it did not receive, TICOM is subrogated to Talley's rights and is entitled to reimbursement from Costain.

In accordance with the foregoing discussion, we reverse the ruling of the trial court and remand this case for entry of judgment for TICOM based on breach of warranty of title. As a result of this holding, it is unnecessary for us to determine whether TICOM should have prevailed, alternatively, under either of the other theories raised.

## ATTORNEYS' FEES

TICOM has requested attorneys' fees in connection with this appeal. The claim is made pursuant to A.R.S. § 12–341.01(A) and (B). Accordingly, and in view of our disposition, it is ordered granting TICOM's request for attorneys' fees against Costain. TICOM is directed to file a statement in accordance with Rule 21, Arizona Rules of Civil Appellate Procedure.

Reversed and remanded.

GERBER and McGREGOR, JJ., concur.