868 P.2d 948

**FIRE INSURANCE EXCHANGE, an inter-insurance exchange, Intervenor Plaintiff–Appellee,**

v.

**THUNDERBIRD MASONRY, INC., Defendant–Appellant.**

**No. 1 CA–CV 91–0044.**

Court of Appeals of Arizona, Division 1, Department B.

April 13, 1993.

Reconsideration Denied July 1, 1993.

Review Denied March 16, 1994.

Broening, Oberg & Woods by Brian Holohan, Phoenix, for intervenor plaintiff-appellee.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Richard J. Woods and Lucas J. Narducci, Phoenix, for defendant-appellant.

## OPINION

EHRLICH, Presiding Judge.

Thunderbird Masonry, Inc. ("Thunderbird"), appeals from the summary judgment entered for Fire Insurance Exchange ("Fire Insurance") in a tort action. The insurance company had intervened to recover its loss after paying a claim for fire damage. For the following reasons, the judgment is reversed.

### FACTS AND PROCEDURAL HISTORY

Marvin Gardens Development Corporation/Northview Terrace Limited Partnership ("Northview") hired Marvin Gardens Development Construction Corporation ("Marvin Gardens") as the general contractor for its condominium development, Mulwood

Springs. Their contract, an American Institute of Architects (AIA) "Standard Form of Agreement Between Owner and Contractor," required Northview to obtain and maintain insurance for the construction project, covering the interests of Northview, Marvin Gardens and all subcontractors. The contract provided in relevant part:

11.3 PROPERTY INSURANCE

11.3.1 Unless otherwise provided, the Owner shall purchase and maintain property insurance upon the entire Work at the site to the full insurable value thereof. This insurance shall include the interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Work and shall insure against the perils of fire and extended coverage and shall include "all risk" insurance for physical loss or damage including, without duplication of coverage, theft, vandalism and malicious mischief....

In the same contract, Northview and Marvin Gardens waived all of the rights that they possessed against each other and the subcontractors to the extent that any damage was covered by insurance.

11.3.6 The Owner and Contractor waive all rights against (1) each other and the Subcontractors, Sub-subcontractors, agents and employees each of the other, and (2) the Architect and separate contractors, if any, and their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to this Paragraph 11.3 or any other property insurance applicable to the Work, except such rights as they may have to the proceeds of such insurance held by the Owner as trustee....

Marvin Gardens hired Thunderbird as the masonry subcontractor. In their contract, also a standard AIA form, they too mutually waived their rights against each other to the extent covered by insurance. Their contract included:

9.2 The Contractor and Subcontractor waive all rights against each other and against the Owner, the Architect, separate contractors and all other subcontractors for damages caused by fire or other perils to the extent covered by property insurance provided under the General Conditions, except such rights as they may have to the proceeds of such insurance.

Northview obtained construction financing from First Commercial Savings & Loan Association ("First Commercial"). Pursuant to their loan agreement, Northview agreed to insure the project and name First Commercial as loss payee:

1.6 Insurance

BORROWER agrees to provide or cause to be provided, at BORROWER's expense, insurance against fire and such other casualties as may be required from time to time by LENDER in companies and amounts approved by LENDER, which insurance shall be payable to BORROWER, and during the construction, to the contractor also, as their respective interests may appear, with standard lenders' loss payable endorsements attached making the proceeds payable to LENDER as lender....

Northview insured the project with a policy obtained from Fire Insurance at an annual premium of $15,609. This builder's risk policy designated First Commercial as the loss payee, providing:

7. MORTGAGE CLAUSE ...: (Applies only to building items and is effective only when policy is made payable to a named mortgagee or trustee.)

Loss or damage, if any, under this policy, shall be payable to the mortgagee (or trustee), named on the first page of this policy, as interest may appear, under all present or future mortgages upon the property herein described in which the aforesaid may have an interest as mortgagee (or trustee) in order of precedence of said mortgages, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes

more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand pay the same.

The policy also specifically recognized the validity of the mutual waivers among Northview, Marvin Gardens and the subcontractors:

11. SUBROGATION: This insurance shall not be invalidated should the named Insured waive in writing prior to a loss any or all right of recovery against any party for loss occurring to the property described.

On May 8, 1987, a fire destroyed much of the project.[1] As a result, Northview made a claim for damages and presented Fire Insurance with a formal proof of loss. While there is some dispute as to how Fire Insurance handled the claim, in essence, it first denied Northview's claim and then paid the policy's proceeds to First Commercial.[2]

A subrogation action was initiated when State Farm Fire & Casualty Company and others sued Thunderbird and Marvin Gardens for damages arising from the fire. Fire Insurance intervened; it sought damages against Thunderbird for the payment to First Commercial, asserting that it was subrogated to First Commercial's rights.

Thunderbird moved for summary judgment, contending that Fire Insurance should be denied a right of subrogation against it because of the mutual waivers. Fire Insurance responded with a cross-motion for partial summary judgment on the issue of waiver. The trial court concluded that there was no waiver by either First Commercial or Fire Insurance and that the insurance policy did not cover Thunderbird. Accordingly, the court denied Thunderbird's motion and granted Fire Insurance partial summary judgment. The parties to the original complaint settled. Thunderbird and Fire Insur-

ance then stipulated for purposes of appeal that Thunderbird was negligent and the court entered judgment for Fire Insurance in the amount of $375,000. Thunderbird timely appealed.

## DISCUSSION

The primary issue is the effect of the mutual waivers executed among Northview, Marvin Gardens and Thunderbird upon Fire Insurance's ability to be subrogated to First Commercial's rights against Thunderbird. Fire Insurance asserts that it is subrogated to First Commercial and that First Commercial is unaffected by the waivers because it was not a party to the construction contracts.

### I. SUBROGATION

Subrogation can be based either on specific language in the pertinent contract, known as conventional subrogation, or on the equitable doctrine of subrogation. *Liberty Mutual Insurance Co. v. Thunderbird Bank,* 113 Ariz. 375, 377, 379, 555 P.2d 333, 335, 337 (1976); *Title Insurance Co. of Minnesota v. Costain Arizona, Inc.,* 164 Ariz. 203, 206, 791 P.2d 1086, 1089 (App.1990). Neither Fire Insurance nor the trial court indicated under which theory of subrogation the case was proceeding or decided. Therefore, we must examine both theories.

### A. Conventional Subrogation

The policy issued by Fire Insurance specifically provides:

Whenever this Company shall pay the mortgagee [First Commercial] (or trustee) any sum for loss under this policy and shall claim that, as to the mortgagor or owner [Northview] no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt. . . .

---

1. For purposes of this appeal, Thunderbird accepts that the fire was negligently caused by one of its employees.

2. Northview's claim originally was denied after Fire Insurance concluded that the policy had been cancelled for nonpayment of the premiums.

However, the proceeds were later paid because of some question as to the validity of the cancellation notice given to First Commercial. First Commercial did not assume any of Northview's missed premium payments.

This is the only provision in the contract that would entitle Fire Insurance to succeed to First Commercial's rights.[3] However, it refers only to First Commercial's rights against Northview under the security documents and has nothing to do with a subcontractor. Therefore, Fire Insurance is not entitled to recover under conventional subrogation.

### B. Equitable Subrogation

■ A party also may succeed to the rights of another under the equitable doctrine of subrogation.

> Subrogation is the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt. It is a creature of equity.... It rests upon the principle that substantial justice should be attained, regardless of form.... It involves three elements: (1) A valuable right; (2) a person who owns the right; and (3) a person who seeks to be substituted in that ownership. There must exist a claim or obligation against the debtor; an original right to that claim on the part of him in whose place substitution is sought, and some right belonging to him who seeks the substitution which will be protected thereby.

*Mosher v. Conway,* 45 Ariz. 463, 468–69, 46 P.2d 110, 112 (1935), *cert. denied,* 305 U.S. 599, 59 S.Ct. 77, 83 L.Ed. 380 (1938). Thus, in order to establish that it is entitled to equitable subrogation, Fire Insurance must show that (1) there was a claim or obligation owed by Thunderbird, (2) First Commercial had an original right to that claim or obligation and (3) Fire Insurance has a right that will be protected by being substituted for First Commercial.

■ Fire Insurance contends that First Commercial had a direct cause of action in tort against Thunderbird, independent of Northview's insurance policy. It relies upon *American Savings & Loan Ass'n v. Leeds,* 68 Cal.2d 611, 68 Cal.Rptr. 453, 456 n. 2, 440 P.2d 933, 936 n. 2 (1968), and *Bank of California Nat'l Ass'n v. Twin Harbors Lumber Co.,* 465 F.2d 489, 491 (9th Cir.1972) (applying California law), to maintain that a mortgagee such as First Commercial has a cause of action against a party for tortiously damaging property pledged as security.

If First Commercial, as mortgagee, had obtained insurance from Fire Insurance covering the condominiums and had Fire Insurance paid a claim thereon, we would agree that Fire Insurance would have a right of subrogation against the party damaging the security. However, First Commercial did not contract with Fire Insurance to insure its security. Instead, First Commercial required Northview to insure the condominiums and make First Commercial an additional insured as loss payee on the policy. Under its contract with Marvin Gardens, Northview similarly was required to insure the property to its full insurable value. The policy's proceeds that Fire Insurance paid to First Commercial were not a result of any claim by First Commercial against Thunderbird for destroying its security. Rather, Fire Insurance paid First Commercial pursuant to Northview's policy; First Commercial had a right to receive the proceeds because of its loan agreement with Northview.[4] As loss payee, First Commercial essentially stepped into Northview's shoes. Thus, any rights Fire Insurance might have must be traced through Northview and considered in terms of the mutual waivers.

In *United States Fidelity & Guaranty Co. v. Farrar's Plumbing & Heating Co., Inc.,*

---

**3.** The provision further includes that Fire Insurance:

> may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

Because Fire Insurance neither paid the entire loan amount nor requested or received an assignment of First Commercial's security, this portion of the policy is irrelevant to the appeal.

**4.** The insurance payment to First Commercial acted as a *pro tanto* reduction in the amount of the debt Northview owed First Commercial. *See Commercial Credit Co. v. Eisenhour,* 28 Ariz. 112, 117, 236 P. 126, 128 (1925).

158 Ariz. 354, 355, 762 P.2d 641, 642 (App. 1988), Division Two gave effect to mutual waivers among an owner, a general contractor and a subcontractor. In that case, the subcontractor's negligence also caused a fire which destroyed the owner's property. The insurer paid the owner's claim and then sued the negligent subcontractor as subrogee of the owner. The court held that identical· AIA form waivers negated any claim by the owner against the subcontractor. As a consequence, there were no rights against the subcontractor to which the insurer could be subrogated:

> The language of the clauses could not be clearer that fire insurance for the project was to be procured by the owner and that all parties to the construction were to look only to the insurance to protect themselves from fire loss. As stated in *Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau*, 786 F.2d 101, 104 (2d Cir.1986):
>
> > A waiver of subrogation is useful in such projects because it avoids disruption and disputes among the parties to the project. It thus eliminates the need for lawsuits, and yet protects the contracting parties from loss by bringing all property damage under the all risks builder's property insurance.

*Id.*, 158 Ariz. at 355, 762 P.2d at 642.[5]

As in *Farrar's Plumbing*, in this case, the owner, general contractor and subcontractors effectively waived any rights that they had against each other. The policy issued by Fire Insurance acknowledged Northview's right to waive any claims against the general contractor and subcontractors and specifically recognized the effect that this would have on Fire Insurance's ability to be subrogated to Northview's rights. Because First Commercial essentially stepped into Northview's position under the insurance policy and because Northview executed enforceable waivers with Thunderbird in the construction contract, First Commercial did not gain any rights against Thunderbird as the loss payee. Presumably, the policy's premium reflected

this limitation. Although *Farrar's Plumbing* is factually distinguishable from the present case because there the insurance proceeds were paid to the owner, whereas here they were paid to the construction lender as loss payee, we do not consider this distinction compelling. Therefore, First Commercial had no right against Thunderbird to which Fire Insurance could be subrogated and the trial court improperly granted Fire Insurance summary judgment.

## II. ATTORNEYS' FEES

■ Thunderbird requests its attorneys' fees pursuant to Ariz.Rev.Stat.Ann. section ("A.R.S. §") 12–341.01(A). It submits that the appeal requires us to interpret the insurance contract and decide the public policy of construction contracts that include subrogation waivers. Fire Insurance responds that this case arose simply as a result of a tort cause of action against Thunderbird and thus does not "arise out of a contract" for purposes of the statute. While Thunderbird is the successful party on appeal, the action did not arise out of a contract.

The original action against Thunderbird was a tort claim for damages caused by its alleged negligence. While Thunderbird's contract with Northview and Northview's contracts with Fire Insurance and First Commercial placed the parties in the posture for the subrogation action which is the subject of this appeal, *see Barmat v. John & Jane Doe Partners A–D*, 155 Ariz. 519, 523, 747 P.2d 1218, 1222 (1987), Fire Insurance is not entitled to more rights than the party to which it maintains it is subrogated, First Commercial. *E.g., Costain Arizona*, 164 Ariz. at 208, 791 P.2d at 1091. First Commercial, in turn, has an interest in the damaged property for which it could have brought an action in tort against Thunderbird; it does not have a contractual relationship with Thunderbird. Therefore, Fire Insurance's subrogation action against Thunderbird arose out of a potential tort claim

**5.** Contrary to Thunderbird's assertion, *Farrar's Plumbing* does not stand for the proposition that such waivers are the public policy of this state. The case merely discusses the advantages that the *parties* gain by including such waivers in

their contracts. *United States Fidelity and Guaranty Co. v. Farrar's Plumbing and Heating Co., Inc.*, 158 Ariz. 354, 355, 762 P.2d 641, 642 (App.1988).

between First Commercial and Thunderbird, which does not satisfy A.R.S. § 12–341.01(A). Accordingly, we deny Thunderbird's request for fees on appeal.

Fire Insurance maintains that Thunderbird's appeal lacks merit and was brought for an improper motive. With this premise, it seeks fees on appeal pursuant to A.R.S. § 12–349 and Arizona Rule of Civil Appellate Procedure 25. Our disposition of the matter, however, makes it unnecessary to address this contention.

## CONCLUSION

The summary judgment is reversed; the cause is remanded for entry of judgment in favor of Thunderbird on Fire Insurance's claim.

JACOBSON and CLABORNE, JJ., concur.