686 P.2d 1295

**The STATE of Arizona,**
**Appellee/Cross-Appellant,**

v.

**Pedro Dolz AVILA,**
**Appellant/Cross-Appellee.**

**No. 2 CA–CR 3286.**

Court of Appeals of Arizona,
Division 2.

June 22, 1984.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Barbara A. Jarrett, Phoenix, for appellee/cross-appellant.

Louie Carrasco, Tucson, for appellant/cross-appellee.

## OPINION

BIRDSALL, Chief Judge.

Appellant was charged by information with armed robbery, aggravated robbery, and conspiracy to commit armed robbery. The state filed an allegation of dangerousness and an allegation of a prior conviction. The state also filed an allegation that these offenses had been committed while appellant was on release status and that the appellant had used a deadly weapon in committing the offenses while he was on release status bringing his sentencing within A.R.S. § 13–604.01(A).

Appellant was subsequently convicted by a jury of all charges. The jury also found the crimes were committed with a gun. He was sentenced to a term of 12.5 years for the armed robbery conviction, 9.5 years for the aggravated robbery conviction and 10.5 years for the conspiracy conviction. On appeal he has raised five issues for our consideration and the state has cross-appealed.

Appellant's first argument is that he was entitled to a directed verdict of acquittal as to the conspiracy charge because there was insufficient evidence to support it. Appellant made a motion for a directed verdict of acquittal under Rule 20, Rules of Criminal Procedure, 17 A.R.S., at the close of the state's case and at the close of the case. The motion was renewed at verdict and again denied.

The elements of a criminal conspiracy are: (1) an unlawful object to be accomplished; (2) a plan or scheme embodying means to accomplish that object; (3) an agreement or understanding between two or more of the defendants whereby they become definitely committed to cooperate for the accomplishment of the object by the means embodied in the agreement or by any effectual means and (4) an overt act, except when the agreement is to commit a felony upon the person of another or to commit arson or burglary. *State v. Estrada,* 27 Ariz. App. 38, 39, 550 P.2d 1080 (1976); A.R.S. § 13–1003(A).

Appellant argues that there is no evidence to show that the three men made an agreement beforehand whereby they became definitely committed to accomplish an armed robbery or that they had a plan embodying the means to accomplish it. He also argues that there was no evidence concerning the commission of the robbery itself to show that they operated pursuant to a prearranged plan or agreement. We disagree.

It is well established in Arizona that the existence of an unlawful agreement can be inferred from the overt conduct of the parties. *State v. Hall,* 129 Ariz. 589, 633 P.2d 398 (1981); *State v. Estrada, supra.* In *Estrada* we quoted favorably the following language from *Smith v. United States,* 157 F.721, 728 (8th Cir.1907):

If [direct evidence of conspiracy] were necessary, it rarely, if ever, could be

proved. ... The effects and results of a conspiracy can be observed and proved, but rarely can one get a glimpse or make proof of the secret conferences which inaugurate it. For these manifest reasons proof of a criminal combination to do an unlawful act can rarely be made except by light reflected from its consequences or results.

In order to prove the charge of conspiracy to commit armed robbery against appellant, the state presented evidence that appellant and his two accomplices, Henry Congress and Louis Jordan, entered a Lavicio's market in the early morning hours of June 6, 1983. The three men placed themselves throughout the store and Congress approached the counter. He motioned for Anthony Lumpkins, one of the clerks, to come closer, and told him that he had something to tell him. Lumpkins told Congress that if he wanted to tell him something to go ahead. Appellant then pulled a gun and held it on Lumpkins. At that time, Jordan went around the counter and grabbed Janet Phillips, the other clerk, by the arm. Jordan and appellant exchanged looks and they said something to each other. Appellant then nodded his head toward the cash register. Jordan told Phillips that he wanted her to get the money for him. He pulled her over to the cash register and she opened it. She started taking money out of the register and Jordan also started taking it out. As she was handing the money to Jordan, appellant fired a shot into the ceiling. Appellant and his accomplices then fled from the store together. When they were spotted by a police officer a short time after the robbery, they were still together. Jordan had the money taken from the register in his pocket when he was apprehended.

■ In reviewing the trial court's denial of appellant's motion for judgment of acquittal, this court must view the preceding facts most strongly in favor of upholding the jury verdict. *State v. Printz*, 125 Ariz. 300, 609 P.2d 570 (1980). When the evidence is viewed in this light, it is apparent that the trial court properly denied appellant's motion for judgment of acquittal. The evidence was substantial enough to warrant submitting the matter to the jury. The jury could have reasonably inferred from that evidence that appellant engaged in a conspiracy with Jordan and Congress to commit an armed robbery.

■ Appellant, nevertheless, claims that there was no evidence that he and his accomplices had entered into an agreement to commit the robbery prior to its commission. While we would agree that there was no direct evidence of an agreement between appellant and his accomplices to commit a robbery, there was ample circumstantial evidence from which the jury could logically have inferred the existence of an agreement. It is obvious from the manner in which the robbery was committed that each participant knew what action he was to take after entering the store. There was no conversation, other than a few words, between the three men. Appellant had only to nod his head in the direction of the cash register for Jordan to immediately tell the clerk that he wanted the money from the register.

Appellant next argues that the court's error in denying his motion for a directed verdict of acquittal on the conspiracy count and the state's failure to withdraw that count was prejudicial requiring reversal of his conviction. Since we have found that the trial court did not err in this regard, this argument is without merit.

■ Appellant's third argument is that the trial court's instruction to the jury on conspiracy to commit armed robbery left out an essential element, thus requiring reversal of his conviction. The conspiracy instruction the trial court gave the jurors provided:

Now, the State has charged that the defendant committed the crime of conspiracy to commit armed robbery. A person commits conspiracy if such person agrees with one or more others that at least one of them will engage in conduct constituting the offense; in this case, the offense of armed robbery. At least one of the persons must commit an overt act in furtherance of the offense, except that no overt act is needed where

the object of the conspiracy was to commit any felony upon the person of another.

> If the person agreed with one or more others to commit armed robbery, and that agreement was made with the intent to promote or aid the commission of armed robbery, he is guilty of the crime of conspiracy for that armed robbery.

At trial, defense counsel made the following objection to the preceding instruction: "And then I oppose the State's only requested instruction, because it is not a complete—it is not a complete [sic], nor is it a thorough explanation of what the law of conspiracy is."

Rule 21.3(c), Arizona Rules of Criminal Procedure, provides:

> No party may assign as error on appeal the court's giving or failing to give any instruction or portion thereof or to the submission or the failure to submit a form of verdict unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

Alleged instructional defects to which a defendant does not object will not be subjected to review on appeal unless they rise to the level of fundamental error. *State v. Mincey*, 130 Ariz. 389, 636 P.2d 637 (1981), cert. denied, 455 U.S. 1003, 102 S.Ct. 1638, 71 L.Ed.2d 871 (1982); *State v. Rybolt*, 133 Ariz. 276, 650 P.2d 1258 (App.1982).

We agree with appellee that although the appellant voiced a general objection to the trial court's instruction on conspiracy, his objection did not satisfy the requirement of Rule 21.3 that a party objecting to an instruction must state distinctly the matter to which he objects and the grounds of his objection. *State v. Edgar*, 126 Ariz. 206, 613 P.2d 1262 (1980). Defense counsel did not argue to the trial court that it did not adequately set forth the requirement that the jury had to find the existence of an overt act in the second portion of the instruction before it could convict appellant of conspiracy.

Furthermore, although the second paragraph of the conspiracy instruction was incomplete because reference to an overt act was omitted, we find the error harmless and not prejudicial. The failure to instruct on a necessary element of an offense is not fundamental error where there is no issue as to that element. *State v. Agnew*, 132 Ariz. 567, 647 P.2d 1165 (App.1982). In the present case, there was no question that an overt act had been committed.

Appellant's fourth argument is that there was insufficient evidence to support his convictions of armed robbery and aggravated robbery since not all of the necessary elements were proven. Specifically, he argues that there was no evidence that he took any property. The evidence does show that Jordan had the clerk open the cash register and hand him the money and that the money was found on him, rather than the appellant, after the three were arrested.

It was not necessary for the jury to find appellant was the one who took money from the victim by force, as he was being tried as an accomplice. *State v. Clovis*, 127 Ariz. 75, 618 P.2d 245 (App.1980). The question that must be resolved is not a question of the sufficiency of the evidence, but rather, whether the trial court erred in failing to instruct the jurors on accomplice liability.

Appellant concedes that he could have been found guilty as an aider and abettor but argues that the jury was not instructed on accomplice liability and that his convictions must therefore be reversed. Neither appellant nor the state requested such an instruction. Errors or omissions in giving jury instructions that have not been raised at trial will not be considered on appeal unless the error is so manifest that the defendant did not receive a fair trial. *State v. Coward*, 108 Ariz. 270, 496 P.2d 131 (1972). Appellant fails to show how he was prejudiced by the court's failure to give an instruction on accomplice liability. Had the trial court given the instruction, the outcome would have been no different.

As his last issue on appeal, appellant claims that the trial court abused its discretion in denying his request for a jury view of the scene of the robbery. Following the close of the state's evidence, defense counsel made the following request:

I do have one other matter I would ask the Court to consider, on having the jury view the scene. This would go to the fact that the descriptions of the witnesses as to the counters, and so forth, is not accurate. I have been there and I would urge the Court to consider the fact that I don't want to testify in this, but it is very easy to see the entire store from inside the counter area. And I think viewing of the scene would help the jury in evaluating the testimony of the two clerks as to what they could see going on.

■■■ The question whether to grant a view of the crime scene by the jury is a matter left to the sound discretion of the trial court. *State v. Money*, 110 Ariz. 18, 514 P.2d 1014 (1973). "... [F]or a denial of a jury view to constitute an abuse of discretion, it must appear almost to a certainty that such denial deprived the jury of material assistance in evaluating the evidence and that such deprivation was in fact prejudicial to the defense." 110 Ariz. at 25, 514 P.2d 1014.

The main thrust of appellant's argument to the jury was that there had been a mistaken identification and that there was evidence which cast serious doubt on the witnesses' identification of appellant. This evidence was that the man with the gun (allegedly the appellant), was in the store less than two minutes after he pulled the gun, and that when the suspects were brought back to the store it took the clerk 10 seconds to identify him. The clerks were also unable to identify one of the suspects although he had been closer to Anthony Lumpkins than the man with the gun. Thus, appellant argues evidence going to the accuracy and reliability of the witnesses' identification was crucial to appellant's defense and a view of the scene would have helped enable the jury to evaluate the clerk's testimony.

■■■ The prosecutor pointed out to the trial court that a number of photographs taken at the scene of the crime had been introduced into evidence and urged that a view of the scene would not serve any purpose. The court agreed, stating that it didn't think "it would add a thing to the case" given the photographs and descriptions by the witnesses. We do not believe that a view would have materially assisted the jury nor that the trial court's denial constituted an abuse of discretion based on the standard set forth in *State v. Money*, *supra*.

Finally, we turn to the state's cross-appeal in which it is argued that the trial court erred in refusing to sentence appellant pursuant to A.R.S. § 13–604.01(A). We agree.

Subsequent to charging appellant with armed robbery, the state filed an allegation that appellant was on release status when he committed the present offense in violation of A.R.S. § 13–604.01(A) which provides:

Notwithstanding any provision of law to the contrary, a person convicted of any felony offense involving the use or exhibition of a deadly weapon or dangerous instrument or involving the intentional or knowing infliction of serious physical injury upon another if committed while the person is on probation for a conviction of a felony offense, or parole, work furlough or any other release from confinement for conviction of a felony offense shall be sentenced to life imprisonment and is not eligible for suspension or commutation of sentence, probation, pardon, parole, work furlough or release from confinement on any other basis except as specifically authorized by § 31–233, subsection A or B until the person has served not less than twenty-five years. A sentence imposed pursuant to this subsection shall be consecutive to any other sentence from which the convicted person had been temporarily released.

Following his convictions, appellant waived his right to a jury trial on this

allegation and the state presented evidence to the trial court that the appellant had been convicted of a felony offense of attempted burglary in Pima County Superior Court cause number CR–07320. The custodian of records for the Department of Corrections (DOC) testified that appellant's probation in the above cause number was revoked on April 6, 1983, and that he was subsequently sentenced to 1 year and 6 months in prison with credit given for 325 days. The custodian also testified that appellant was on release from prison on May 16, 1983, under mandatory release provisions, but that he was to remain under the supervision of the DOC until November 1983. The trial court made a finding that appellant had committed the present offense while he was on mandatory release from DOC.

At sentencing, however, the trial court stated:

> And on the record, I want to be sure, to show them that on the proof that he was on a parole status or release status from the Department of Corrections; as the finder of fact, I couldn't make any specific finding exactly what type of release he was on. And I know that he was on some type of release, but as finder of fact, I just don't think that I am going to sit here and give a man life imprisonment on the basis of what I heard on proving that he was on some kind of a mandatory release from the Department of Corrections. They have to be more exact in their proof.

It is evident from the record that the trial court did not set aside its finding that appellant was on "any other release from confinement" which requires enhanced sentencing under § 13–604.01(A). Thus, the cross appeal falls within the ambit of A.R.S. § 13–4032(6) which provides that an appeal may be taken by the state on the grounds that a sentence is illegal or the sentence imposed is other than the presumptive sentence authorized by § 13–604 or § 13–701.

No evidence contradicted the proof that the appellant was on release from DOC confinement when the instant offenses were committed. The trial court's finding in that regard was correct beyond a reasonable doubt. There was no reason to disbelieve the evidence presented and nothing suggests the trial court did not believe it. The legislature has mandated that a person committing a dangerous felony offense while he is on release from confinement for a felony offense be sentenced to life imprisonment without release except as provided in A.R.S. § 31–233(A) or (B), until not less than 25 years have been served. A.R.S. § 13–604.01(A). The legislative mandate must be followed. *See State v. Bly*, 127 Ariz. 370, 621 P.2d 279 (1980).

Judgment of convictions affirmed.

The three sentences are modified to concurrent life sentences and as modified are affirmed.

HATHAWAY and HOWARD, JJ., concur.