972 P.2d 1010

Kenneth R. SILER and Sunburst Realty and Investment Corp., Plaintiffs–Appellants, Cross Appellees,

v.

The ARIZONA DEPARTMENT OF REAL ESTATE, Defendant–Appellee, Cross–Appellant.

Andre G. Fleuridas, an individual, and Colt Realty, Inc., an Arizona corporation, Plaintiffs–Appellees, Cross Appellants,

v.

The Arizona Department of Real Estate, an agency of the State of Arizona; and Jerry A. Holt, in his capacity as commissioner, Defendants–Appellants, Cross Appellees.

Joseph Mullen, Jr., individually and as Trustee of The Joseph Mullen Family Trust; The Joseph Mullen Family Trust; JLJ Limited Partnership; Michael A. Sahady; Marie Sahady; Bonnie Weekes; and James Weekes, Plaintiffs–Appellees, Cross Appellants,

v.

Jerry A. Holt, Commissioner of the Arizona Department of Real Estate; The State of Arizona, by and through the Arizona Department Of Real Estate; Colt Realty, Inc.; Andre G. Fleuridas; Sunburst Realty and Investment Corp.; Kenneth R. Siler, ANCR Growers Corp.; J.C. Kottgen; John J. and Lucia A. Franolich; and Copper Basin Partnership, Defendants–Appellants, Cross Appellees.

No. 1 CA–CV 97–0360.

Court of Appeals of Arizona, Division 1, Department B.

June 4, 1998.

Review Denied Feb. 23, 1999.

Jennings, Strouss & Salmon, P.L.C. by Douglas G. Zimmerman, James M. Ackerman, Phoenix, for Siler and Sunburst Realty.

Grant Woods, Attorney General by W. Mark Sendrow, Susan B. Lagerman, Assistant Attorneys General, Phoenix, for Arizona Department of Real Estate.

Gallagher & Kennedy, P.A. by Michael M. Grant, Don D. Skypeck, Phoenix, for Appellees, Cross Appellants Fleuridas and Colt Realty.

Walraven & Roberts by Richard Walraven, Prescott, for Appellees, Cross–Appellants Mullen. ·

## OPINION

GERBER, Judge.

¶ 1   This is a consolidated appeal of several cases in which the Arizona Department of Real Estate alleged that three groups of persons or entities acted in concert to violate the state subdivision laws.  The land in question is located in a wooded area outside Prescott, Arizona.  During the relevant time periods, the division of land "for the purpose of sale or lease … into four or more lots, parcels, or fractional interests" triggered application of the subdivision laws.  Arizona Revised Statutes Annotated ("A.R.S.") § 32–2101(41) (1992), *amended by* § 32–2101(54)(1994).  The laws required the seller to file a notice of intention to subdivide lands, A.R.S. section 32–2181,[1] and to obtain a public report authorizing sales of subdivided lots or parcels.  A.R.S. § 32–2183.[2]  Neither was done here.

---

1.  This notice must state, among other things, the provisions for permanent access, sewage and waste collection, public utilities, public schools, and any restrictive covenants.  A.R.S. § 32–2181(A)(8),(9),(11) (1992).

2.  The report must contain the data required under section 32–2181 and must be furnished to each prospective buyer.  A.R.S. § 32–2183(A) (1992).

¶ 2 After a hearing, the real estate administrative law judge ("ALJ") issued findings of fact and conclusions of law. The Real Estate Commissioner ("Commissioner") adopted those findings and conclusions and issued a final order in which he (a) imposed fines; (b) suspended real estate broker's and salesperson's licenses; and (c) ordered some of the parties to obtain the permits, licenses, and reports necessary for a lawful subdivision; to bring the roads up to standard in the subject area; and to petition Yavapai County to accept all roads for perpetual maintenance.

¶ 3 The parties subject to the final order appealed to the superior court, which affirmed in part and vacated in part the Commissioner's final order. It also awarded attorneys' fees to each of the appellants.

¶ 4 The Commissioner now appeals from the superior court judgment in the first two cases described below. The affected persons have cross-appealed. In the third case, the appellants challenge the superior court's finding that they acted in concert to violate the subdivision statutes, and the Commissioner cross-appeals. In all cases, we vacate the superior court judgment to the extent it vacated the remedies imposed by the Commissioner. We also vacate the awards of attorneys' fees against the Commissioner. We find that substantial evidence supported the agency determinations that the parties in these three matters violated the Arizona subdivision laws. We address the cases in turn and begin with the Mullen group.

## I. THE MULLEN GROUP

¶ 5 The Commissioner argues that the superior court properly affirmed his administrative finding that this group had illegally subdivided land. The Commissioner contends, however, that the court erred in vacating the remedial aspects of the final order. The Mullen group cross-appeals from the administrative determination that it violated the subdivision statutes.

## A. FACTUAL AND PROCEDURAL BACKGROUND

¶ 6 Joseph Mullen, Jr. ("Mullen") and John Franolich ("Franolich") formed a partnership, JLJ Ltd., for the purpose of buying land near Prescott. The Commissioner found that Mullen, John and Lucia Franolich, JLJ Partnership, Bonnie (Mullen's daughter) and James Weekes, Michael (Mullen's stepson) and Marie Sahady, and the Mullen Family Trust (collectively "the Mullen group") acted in concert to subdivide land in violation of state subdivision laws.

¶ 7 Specifically, the Commissioner found that Mullen and Franolich used the partnership to buy land, divided the land between themselves, and further subdivided that land into a total of six lots. He also found that, at the same time, Mullen purchased a contiguous parcel and divided it into three lots.

¶ 8 Mullen later bought a ten-acre parcel from Copper Basin Partnership in the same area. The escrow instructions accompanying the sale provided for two-acre lot releases. Mullen ordered a survey splitting the parcel into five two-acre lots. Mullen sold two lots and conveyed the remainder to Sahady. Even before Sahady had title, he contracted to sell another two lots and retained one. Thus the parcel was divided into five lots, and the two sales by Sahady more than recouped what he paid for the six acres. The Commissioner concluded that the sale to Sahady was not "arm's length."

¶ 9 Additionally, Mullen purchased an eight-acre parcel from Kenneth Siler, not contiguous to the ten acres but nearby. The escrow instructions provided for two-acre lot releases, and a surveyor accordingly prepared legal descriptions for four lots. Mullen transferred the property to the Mullen Family Trust; Bonnie Weekes and the Sahadys were among the trust's beneficiaries. Mullen then transferred half the parcel to the Sahadys for virtually no consideration. Sahady sold a two-acre lot from his parcel and listed the other lot for sale. The trust had two lots surveyed on its four acres and listed one for sale.

¶ 10 Mullen purchased another ten acres in the same area and ordered a survey dividing the land into five lots. He immediately transferred six acres to Bonnie Weekes. The Commissioner found that within four months, Weekes and Mullen "acquired, divided and sold at a profit eight of the ten acres in this parcel." Weekes was left with a two-acre lot at no cost to her.

¶ 11 City and county officials testified at the administrative hearing about the nature of the land subdivided by these three groups. The officials stated that the mostly dirt and rock roads in the area did not meet county standards and were virtually unusable by fire trucks; no fire hydrants or water lines existed; the land was heavily forested and steeply graded; and that these conditions posed a very serious fire risk to the people living in the area as well as to neighboring residents and fire fighters. Therefore, in addition to suspending Sahady's real estate sales license and imposing civil fines on the Mullen group members, the Commissioner ordered Mullen, Franolich, and JLJ Partnership to obtain the documents necessary for a lawful subdivision, to bring all roads up to county standards, and to petition Yavapai County to accept the roads for perpetual maintenance.

¶ 12 In the Mullen group's appeal to the superior court, the court agreed that the evidence supported the Commissioner's factual findings, but it vacated as excessive the order to obtain necessary documents for a legal subdivision, to bring the roads up to county standards, and to petition for their acceptance by the county. It found no abuse of discretion in the fines and penalties imposed. The court awarded the Mullen group attorneys' fees of $2,000 and non-taxable costs in the amount of $1,510.

## B. DISCUSSION

*Standard of Review*

■ ¶ 13 The superior court may reverse an agency's decision only if the court finds the decision illegal, arbitrary, or an abuse of the agency's discretion. *Berenter v. Gallinger,* 173 Ariz. 75, 77, 839 P.2d 1120, 1122 (App.1992). The court does not conduct a trial de novo, act as the trier of fact, nor substitute its view of the evidence for that of the agency. *See Havasu Heights v. Desert Valley Wood,* 167 Ariz. 383, 386, 807 P.2d 1119, 1122 (App.1990).

■ ¶ 14 We review the superior court's ruling "to determine whether the record contains evidence to support the judgment, and in doing so, we reach the underlying issue of whether the administrative action was illegal, arbitrary, capricious or involved an abuse of discretion." *Id.* The substantial nature of the evidence is a question of law about which we draw our own conclusion. *Id.* at 387, 807 P.2d at 1123.

*The Appeal*

■ ¶ 15 The Commissioner contends that the superior court exceeded its authority under the Administrative Review Act, A.R.S. sections 12–901 to 914, in vacating that part of the final order directing that the Mullen group obtain necessary permits, improve the roads, and petition for acceptance of the roads. Neither we nor the superior court may substitute our judgment for that of the Commissioner. *Schillerstrom v. State,* 180 Ariz. 468, 472, 885 P.2d 156, 160 (App.1994). The courts should affirm an agency order when substantial evidence exists to support it and the remedy ordered is within the range of permissible dispositions. *See Howard v. Nicholls,* 127 Ariz. 383, 388, 621 P.2d 292, 297 (App.1980) (affirming superior court's order affirming revocation of real estate broker's license).

■ ¶ 16 The subdivision laws intend to protect the public health, safety, and welfare. *See* 1992 Ariz. Sess. Laws Ch. 14, § 3; *Alaface v. National Investment Co.,* 181 Ariz. 586, 596–97, 892 P.2d 1375, 1385–86 (App. 1994) (laws are to insure that residential developments have adequate streets, utilities, and drainage and that land is usable and safe). The testimony of fire and planning officials that substandard roads in the illegally subdivided area posed a danger to lot purchasers, neighboring residents, and fire fighters constituted substantial evidence of potential harm to public safety. The Commissioner's order intended to lessen this danger, and substantial evidence supports it.

¶ 17 Moreover, the remedy ordered is within the Commissioner's authority. *See Arizona Real Estate Dept. v. Arizona Land Title & Trust Co.*, 9 Ariz.App. 54, 60, 449 P.2d 71, 77 (1968) (statutes regulating real estate are remedial and require liberal interpretation). If the Commissioner believes that a person has violated the subdivision laws, he may "hold a public hearing and, after the hearing, may issue such order or orders as he may deem necessary *to protect the public interest and insure compliance with the law, rule or public report.* . . ." A.R.S. § 32–2183(G)(1992) (emphasis added). Although the statute does not describe in detail possible orders, it commits decisions about what is necessary to protect the public and to secure compliance with the law to the Commissioner's discretion. The final order merely required the group to do what it would have had to do if, at the outset, the group had sought permission and legally subdivided the area.

¶ 18 The superior court found the remedial order an excessive penalty apparently because the statute now—unlike at the time in question—defines a subdivision as land divided into *six* or more lots.[3] The court relied on *Lathrop v. Arizona Board of Chiropractic Examiners*, 182 Ariz. 172, 894 P.2d 715 (App.1995) and *Schillerstrom*, 180 Ariz. at 468, 885 P.2d at 156. In both, professional licensees appealed administrative decisions revoking their licenses on the ground that revocation was an excessive penalty.

¶ 19 In *Schillerstrom*, we held that a penalty "is excessive only if it is so disproportionate to the offense as to shock one's sense of fairness." *Id.* at 471, 885 P.2d at 159. The licensing statute allowed revocation for a single violation, and in both cases the administrative board had found multiple statutory violations. In *Schillerstrom*, however, the superior court had vacated the license revocation as excessive. We reversed that decision because the evidence supported the administrative action. *Id.* at 472, 885 P.2d at 160. We held that "in order to reverse the agency's decision, the trial court must find that there was *no* substantial evidence to support the agency decision." *Id.* at 471, 885

P.2d at 159 (emphasis added). Here, we cannot say that no substantial evidence supported the Commissioner's ordered remedy; the evidence was clearly substantial.

¶ 20 The Mullen group contends that the order is excessive because the group cannot subdivide lands belonging to others; the laws in effect at the time were ambiguous; and if it had acted today, no violation would exist under the amended subdivision laws. Nevertheless, we do not find the order shocking to our sense of fairness. Had the Mullen group notified the Commissioner of its intent to subdivide at the time it was doing so, it would have been required to assure installation of adequate roads and utilities. *See* A.R.S. § 32–2181(A)(17). The Commissioner's order imposes no greater burden than that imposed by the relevant statutes applicable at the time.

¶ 21 Because substantial evidence supported the Commissioner's decision that inadequate roads endangered not only the safety of area residents but also a large subdivision nearby as well as fire fighters, we vacate the superior court's judgment that the remedial order was excessive. The lack of complaint from area residents or their opposition to more developed roads is irrelevant; they may even be unaware of the danger. Further, neither residents nor developers set road standards. Instead, the county has adopted standards governing grades, composition, drainage, and size of roads, and substantial evidence showed a violation of those standards.

*The Cross–Appeal*

¶ 22 The Mullen group argues that it did not illegally subdivide land and that all penalties should be struck. The group contends that no member consciously agreed or knowingly intended to act in concert with other group members to violate the law and that none sold more than three *contiguous* parcels.

¶ 23 We need not accept either the superior court's or the Commissioner's interpretations of statutory language. *Roberts v. State*, 179 Ariz. 613, 617, 880 P.2d 1159, 1163

3. *See* A.R.S. § 32–2101(54)(Supp.1997).

(App.1994). We review the Commissioner's factual findings under the substantial evidence standard. *Havasu Heights,* 167 Ariz. at 387, 807 P.2d at 1123.

¶ 24   A.R.S. section 32–2181(D) provides: "It shall be unlawful for a person or group of persons acting in concert to attempt to avoid the provisions of this article *by acting in concert to divide a parcel of land by using a series of owners or conveyances* or by any other method *which ultimately results in the division of such land into a subdivision.*" (Emphasis added.)[4]   When interpreting statutes, we are guided by the legislature's intent. *Alaface,* 181 Ariz. at 592, 892 P.2d at 1381. We also give statutory words their ordinary meaning unless the context otherwise requires. *Mail Boxes v. Industrial Comm'n of Arizona,* 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995).

¶ 25   We agree with both the superior court and the Commissioner that the undefined phrase, "to act in concert," means only that the parties must agree to act together to divide their land; they need not agree to violate the law. An agreement can be inferred from the parties' actions. *See State v. Avila,* 141 Ariz. 325, 327, 686 P.2d 1295, 1297 (App.1984) (conspiracy to commit armed robbery can be inferred from conduct).

¶ 26   This statute intends to protect the public from illegal subdivisions. In cases involving a statute with a similar remedial purpose, we have not demanded proof of specific intent to violate the law. Such explicitness is rarely if ever found. *See Alaface,* 181 Ariz. at 591, 892 P.2d at 1380 (to establish consumer fraud claim, specific intent to deceive need not be shown); *State ex rel. Babbitt v. Goodyear Tire,* 128 Ariz. 483, 486, 626 P.2d 1115, 1118 (App.1981) (purpose of consumer fraud act is to protect public; complainant need only show intent to do the act alleged).

¶ 27   Further, we reject the contention that the definition of "acting in concert" in the tort statute abolishing joint and several liability applies in the real estate context. The legislature clearly limited use of the tort definition in A.R.S. section 12–2506 to "this section." *See* A.R.S. § 12–2506(F)(1). That definition is not pertinent here.

¶ 28   Therefore, no specific intent to violate the law is required; such a strict requirement would effectively gut the statute. Instead, substantial evidence exists to support the finding that the Mullen group acted together to avoid the relevant statutes by using a series of owners and conveyances to create subdivisions of four or more lots.

¶ 29   We next briefly address the group's allegation that to be a subdivider, one must sell more than three *contiguous* lots. Before its recent amendment, A.R.S. section 32–2101 defined a subdivision as land *"divided or proposed to be divided for the purpose of sale ... whether immediate or future, into four or more lots,* parcels or fractional interests." A.R.S. § 32–2101(41). The statute did not state that the lots must be contiguous.

¶ 30   The statute also defined a subdivision to *"include* lands divided or proposed to be divided as part of a *common promotional plan." Id.* (emphasis added). A "common promotional plan" is:

> a plan, undertaken by a person or a group of persons acting in concert, to offer lots for sale or lease. *If the land is offered for sale by a person or group of persons acting in concert, and the land is contiguous* or is known ... or advertised as a common unit or by a common name, *the land is presumed, without regard to the number of lots covered by each individual offering, as being offered for sale ... as part of a common promotional scheme.*

A.R.S. § 32–2101(11) (emphasis added). The statute thus allowed land divided under a common promotional scheme to meet the definition of a subdivision. The second sentence quoted above created a presumption that contiguous lands, if offered either by one or a group, regardless of the number of lots in

---

4.   As amended, A.R.S. section 32–2181(D) adopts an objective standard. It "requires proof that the real estate licensee ... knew or with the exercise of reasonable diligence should have known that property ... was subdivided land subject to ... this article."

each offering, were part of a common promotional scheme and therefore a subdivision.

¶ 31    We do not believe that the superior court or Commissioner needed to define "contiguous," in order to resolve this case. Once both accepted that the Mullen group members bought land to be divided for sale into four or more lots, and through conveyances among themselves created four or more lots, the evidence established a violation of section 32–2101, and the contiguous nature of the individual lots became irrelevant. The group members could not avoid application of the law simply by dividing the lots so that no group member owned or sold more than three contiguous lots.

## C.  CONCLUSION—MULLEN GROUP

¶ 32    Substantial evidence supported the remedies imposed by the Commissioner's final order. Those remedies were neither excessive nor beyond the Commissioner's authority. We reverse that portion of the superior court's judgment vacating the direction to comply with the subdivision laws, to bring the roads up to standard, and to petition for acceptance by the county. We affirm the judgment to the extent that it affirmed the imposition of fines on the group members. We accordingly reverse the grant of attorneys' fees to the Mullen group in the appeal because that group is no longer even partly prevailing.

¶ 33    In the cross-appeal, we find substantial evidence supported the conclusion that the Mullen group members acted together to violate the subdivision laws. We decline to vacate that finding.

## II.  FLEURIDAS AND COLT REALTY

¶ 34    This related case involves a twenty-acre parcel of land near Prescott owned by Copper Basin Partnership ("Copper Basin") and later divided into four parcels. The Commissioner appeals from the superior court's ruling that no violation of the subdivision laws occurred because a dirt road traversed the parcel, rendered it into two pieces, and no more than three splits occurred in each piece. We reverse that finding and conclude that the four divisions were unauthorized by law. Fleuridas' cross-appeal relates to the adequacy of the attorneys' fees awarded by the superior court.

## A.  FACTUAL AND PROCEDURAL HISTORY

¶ 35    Andre Fleuridas ("Fleuridas") was the designated broker and president of Colt Realty. Kenneth Siler ("Siler") was a designated broker of Sunburst Realty. Fleuridas and Siler joined with a number of others to form Copper Basin in the early 1980s.

¶ 36    At about the same time, Fleuridas learned that some United States Forest Service ("USFS") land near Prescott might be exchanged for some land in Coconino County. Fleuridas bought the Coconino County land in order to participate in the exchange. A formal exchange agreement was executed in 1984, and a land patent from the United States was signed and recorded in the spring of 1985. The patent transferred Government Lot 11 (and others) to Transamerica Title Insurance Company as trustee for two trusts, one of which named Fleuridas the sole beneficiary.

¶ 37    The land patent reserved three easements, none of which was for a dirt road called Mullen Way across Lot 11. Fleuridas apparently instructed the title company to dedicate an easement to Yavapai County for Mullen Way, but the County did not accept it for maintenance.

¶ 38    The Commissioner found that Fleuridas initially owned Lot 11 and conveyed title to a person named Tarabek. Tarabek then conveyed twenty acres to Copper Basin, twelve acres to Siler, and seven acres to two unrelated parties. Between 1989 and 1993, Copper Basin split its twenty acres into four lots. It sold three parcels to unrelated parties and one to Joseph Mullen, Jr. Fleuridas received broker's commissions on three of the four sales.

¶ 39    In 1993, the Department of Real Estate alleged that Fleuridas, Copper Basin, and Siler had engaged in illegal land sales. The Commissioner found that Copper Basin's twenty acre parcel had been one tract when purchased and that Fleuridas, Copper Basin, and Siler had unlawfully subdivided the par-

cel. The Commissioner also found that Fleuridas and Siler each owned ten percent of Copper Basin and that they controlled its activities. Because Fleuridas and Siler failed to disclose to buyers the lack of a subdivision report and the presence of substandard roads, the Commissioner suspended their real estate brokers' licenses for two years and imposed civil fines.

¶ 40 The superior court found that the land was really two parcels divided by Mullen Way so that the three lot divisions on one side of the road and a fourth division on the other side did not trigger the subdivision laws. The court vacated the penalties imposed on Fleuridas and Colt and assessed attorneys' fees and costs against the Commissioner. The Commissioner appeals.

## B. DISCUSSION

### Standard of Review

■■■ ¶ 41 On appeal, neither we nor the superior court reweighs the evidence; instead the record must be viewed with deference to the factual findings with inquiry into whether substantial evidence supports those findings. *Sigmen v. Arizona Dept. of Real Estate*, 169 Ariz. 383, 386, 819 P.2d 969, 972 (App.1991). On questions of credibility, the administrative hearing officer is the proper judge.

### The Appeal

■■■ ¶ 42 We agree with the Commissioner that the superior court erred in disregarding the Commissioner's findings and in concluding that Copper Basin's property was two parcels. The Commissioner's findings referred to interpretations of California's similar subdivision statute in which the courts have treated non-contiguous parcels as a subdivision if grouped in a "sufficiently restricted area." We need not decide if that interpretation applies, however, because the Commissioner's finding that a "county dedicated road or private easement driveway will not separate one parcel to permit maximum

splits on each side of the dirt road" is sufficient to resolve this issue.

¶ 43 The land patent reserved three easements, none of which was for Mullen Way. Fleuridas points to schedule A of the exchange agreement which noted an "[e]asement for a surveyed right-of-way (for access road) ... across Lot 11, ... as previously authorized under a National Forest special use permit.... Easement to be dedicated to Yavapai County." Fleuridas argues that the exchange agreement reserved title to Mullen Way in the USFS and that in turn the USFS dedicated an easement for Mullen Way to the county. Because he did not create the easement for Mullen Way, Fleuridas argues that under the Real Estate Department's longstanding policy expressed in the "barrier" rule, A.A.C. R4–28–29,[5] the easement created two non-contiguous parcels.

■■■ ¶ 44 We disagree with this novel argument. A land patent from the federal government is a deed, and as such it conveys whatever interest the United States has in the land. *See* 5B Thompson on Real Property § 2712 at 327 (1978). A deed "tendered in performance of an agreement to convey merges the written ... agreement to convey in the deed, the agreement to convey being discharged *or modified* as indicated by the deed, and thereafter the deed regulates the rights and liabilities of the parties." *Hueg v. Sunburst Farms (Glendale) Mut. Water and Ag. Co.*, 122 Ariz. 284, 288, 594 P.2d 538, 542 (App.1979). This general rule is subject to proof of contrary intent by the parties. *Title Ins. Co. v. Costain Arizona*, 164 Ariz. 203, 208, 791 P.2d 1086, 1091 (App.1990); *see e.g. State v. Crawford*, 7 Ariz.App. 551, 555, 441 P.2d 586, 590 (1968) (silence of land patent for public highway does not preclude proof of existence of public right of way prior to patent). No substantial evidence in the record proves a contrary intent. Therefore, the exchange agreement does not supersede the land patent, and the patent did not reserve title to Mullen Way in the USFS.

5. The rule, repealed by the time of these transactions, provided in part: "Land on two sides of a barrier, including but not limited to, a public highway, river, canyon, canal or lake will be considered two separate non-contiguous parcels when such parcels cannot be reunited and when the barrier was not caused or created by the present owner."

¶ 45 Even if the patent had reserved an easement, the easement would not divide the parcel in two. "[A]n easement is a right that one person has to use the land of another for a specific purpose." *Ammer v. Arizona Water Co.,* 169 Ariz. 205, 208, 818 P.2d 190, 193 (App.1991). An easement "does not disturb the legal title of the premises except as it is limited by the character of the easement." *Etz v. Mamerow,* 72 Ariz. 228, 231, 233 P.2d 442, 444 (1951). If the USFS had burdened its land with an easement, the general rule is that the easement, once recorded, would run with the land and would be a burden on USFS's successors. 7 *Thompson on Real Property* § 60.07(a), at 468–69 (David A. Thomas ed. in chief 1994). But the easement would not result in the USFS retaining title to the land subject to the easement or creating a strip of USFS land between two portions of land owned by Copper Basin.

¶ 46 We also reject Fleuridas' assertion that a handwritten note by an unidentified person on a surveyor's map proves that the USFS retained title to Mullen Way. "A surveyor is not a judicial officer." *Crawford,* 7 Ariz.App. at 554, 441 P.2d at 589. Even assuming that the surveyor was the person who wrote that the USFS "retains title to land," his plat does not resolve the legal status of Mullen Way.

¶ 47 Further, although Fleuridas testified that he received oral assurance from county officials that Mullen Way rendered this parcel two pieces, the ALJ found his testimony not credible. We necessarily defer to that conclusion. *See Sigmen,* 169 Ariz. at 386, 819 P.2d at 972. Additionally, the repeal of the "barrier" rule occurred before the date of these transactions, and, in any event, no evidence established that Mullen Way was a permanent barrier that would prevent the land from being reunited as contemplated by that rule.

¶ 48 The superior court erred in finding that Mullen Way separated Copper Basin's parcel in two and created two non-contiguous parcels. No one disputes that Copper Basin

divided this property into four lots. Therefore, the parcel was subject to the subdivision laws.

*The Cross–Appeal*

¶ 49 Fleuridas and Colt requested attorneys' fees at the rate of at least $125 per hour under A.R.S. section 12–348 or an award of the entire amount of their attorneys' fees under A.R.S. section 12–349. In light of our decision to affirm the Commissioner's final order, we vacate the superior court's award of attorneys' fees to Fleuridas and Colt because they are no longer prevailing parties.

## C. CONCLUSION—FLEURIDAS

¶ 50 Laws governing the sale of real estate are to be liberally interpreted to protect the public. *See Arizona Land Title & Trust Co.,* 9 Ariz.App. at 60, 449 P.2d at 77. The Commissioner's final order properly imposed remedies to protect the public from very real fire risks created by substandard roads in the area. Those remedies are within the permissible range of dispositions authorized by A.R.S. section 32–2183(G). *See Howard,* 127 Ariz. at 388, 621 P.2d at 297. We reinstate the order that Fleuridas file the necessary reports and cease all illegal subdivision activity in Lot 11. We deny Fleuridas' request for attorneys' fees incurred in the proceedings in this court.

## III. SILER AND SUNBURST REALTY

¶ 51 The superior court found that Kenneth R. Siler ("Siler"), Fleuridas, and Copper Basin did not illegally subdivide Copper Basin's twenty-acre parcel. But the court found that because Siler owned a parcel contiguous to Copper Basin's parcel, Siler controlled both and was subject to the Real Estate Department's "single owner" rule. *See* A.A.C. R4–28–1201.[6] Siler now contends that the Commissioner and the superior court misinterpreted the single owner rule and asks that we vacate all penalties imposed on him and remand for reconsideration of the

**6.** This rule states in part: "A. If two or more contiguous parcels of land are acquired by a single owner, they shall thereafter be considered

to be a single parcel for purposes of subdivision laws."

attorneys' fees awarded. The Commissioner cross-appeals from the superior court's finding that Siler did not violate the subdivision laws as to Copper Basin's parcel.

## A. FACTUAL AND PROCEDURAL BACKGROUND

¶ 52  Siler was the designated broker for Sunburst Realty & Investment Co. ("Sunburst"), had been in the real estate business for many years, testified that he was an expert in all types of land transactions, and was a longstanding friend and business associate of Fleuridas. The Commissioner rejected as incredible Siler's claims that he was surprised to receive Yavapai County land through the USFS land exchange and equally surprised that his land was contiguous with that of Copper Basin. But because Siler divided his parcel into two lots, those divisions, without more, would not violate the subdivision laws.

¶ 53  The Commissioner found, however, that Siler's and Copper Basin's parcels should be considered as one due to Siler's "close involvement and control of the activities of Copper Basin." Other evidence suggested that Siler had acted closely and in concert with Fleuridas and Copper Basin. For example, Fleuridas ordered a survey of Lot 11 to show four splits of Copper Basin's parcel and two splits of Siler's portion. The four splits conformed to the sales of four portions by Copper Basin, and the two splits conformed with Siler's sale of eight acres to Joseph Mullen, Jr. (referred to in section I) and four acres to an unrelated party. Further, Siler and Fleuridas were the signatories on Copper Basin's bank account. Each held an undivided ten percent interest in the partnership, acted as agents for the other principals in the partnership, and collected commissions on the sale of partnership property. From the close connection between Siler and Copper Basin and the fact that Siler's twelve-acre parcel was contiguous with Copper Basin's parcel, the Commissioner concluded that Siler hid his ownership of the Copper Basin parcel and that the land had been split into more than three lots.

¶ 54  Due to a legal error about the effect of Mullen Way on Copper Basin's parcel, the superior court found no violation of the subdivision laws in the four splits of Copper Basin's parcel. But, because the court applied the single owner rule, it nevertheless concluded that Copper Basin's and Siler's parcels would be treated as one for purposes of the subdivision laws. See A.A.C. R4–28–1201. When Siler divided his parcel and Copper Basin divided its contiguous parcel, the court found the sale of the fourth lot in that combined parcel violated the subdivision laws. The Commissioner and the trial court each reached the right result, although for different reasons.

## B. DISCUSSION

*The Appeal*

■  ¶ 55  Siler claims that no evidence showed he knowingly or intentionally owned two contiguous parcels in Lot 11 because the USFS allocated the various parcels among the land exchange participants. He relies on the repealed "permanent barrier" rule to argue that Mullen Way separated the Copper Basin parcel in two and thus the divisions were legal. He also argues that the court improperly treated him and Copper Basin as a "single owner" within the meaning of A.A.C. R4–28–1201. He contends that he neither controlled Copper Basin nor was its single owner.

¶ 56  We need not decide whether Siler was or was not a single owner because substantial evidence, even if conflicting, supported a conclusion that Siler acted in concert with Copper Basin to avoid the subdivision laws. See *Webster v. State Bd. of Regents*, 123 Ariz. 363, 365–66, 599 P.2d 816, 818–19 (App.1979) (if record supports two inconsistent factual conclusions, substantial evidence will support administrative officer's selection of either). We do not reweigh the evidence presented before the Commissioner. See *Berenter*, 173 Ariz. at 77, 839 P.2d at 1120. As noted above, substantial evidence supported the conclusion that Siler and Fleuridas controlled Copper Basin and that the three acted together to avoid the subdivision laws' requirements in Copper Basin's divisions of its twenty acres. Similarly, substantial evidence sup-

ports a finding that Siler, Fleuridas, and Copper Basin acted together to treat the twenty acres and twelve acres as one parcel to be surveyed and divided. In doing so, they attempted to avoid compliance with the subdivision laws.

¶ 57 The Commissioner found that Siler's sales activity could "be linked to that of Copper Basin" and that Siler "hid his ownership" of the Copper Basin parcel. The Commissioner found that Siler had violated A.R.S. section 32–2181(D), which prohibits an attempt to avoid the law by "acting in concert ... through a series of owners or conveyances or by any other method." Siler's land therefore constituted a subdivision even if Siler only made two divisions of his portion. Division of the two contiguous parcels was subject to the subdivision laws.

¶ 58 Accordingly, we affirm the Commissioner's final order directing Siler to obtain the necessary permits for a subdivision, to make necessary improvements, and to pay the civil fines. We vacate the superior court's award of $15,000 in attorneys' fees and nontaxable costs of $2,828.50 to Siler and Sunburst.

*The Cross–Appeal*

¶ 59 The Commissioner cross-appeals from the superior court's disregard of the Commissioner's finding that Siler acted in concert with Fleuridas and Copper Basin to avoid the law in the subdivision of Copper Basin's twenty acres. We have resolved this issue in the Commissioner's favor in section II of this decision. Copper Basin's parcel was not divided by Mullen Way into two; the four-way split was therefore illegal.

¶ 60 The Commissioner also asks that we reinstate the order that Siler contribute to improving the roads in the illegally subdivided area. We have accordingly reinstated that order, particularly in view of the substantial evidence that the roads fall below county standards.

## CONCLUSION

¶ 61 For reasons given above, we vacate the superior court's orders regarding these parties and reinstate the orders of the Commissioner.

SUSAN A. EHRLICH, Presiding Judge, Department B, and PHILIP E. TOCI, Chief Judge, concur.