NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CABRAL HOUSE, L.L.C.; DAVID
MANISCALCO; KATHY MANISCALCO,
*Plaintiffs/Appellants*,

*v.*

ARIZONA DEPARTMENT OF ECONOMIC
SECURITY DIVISION OF
DEVELOPMENTAL DISABILITIES;
ARIZONA HEALTH CARE COST
CONTAINMENT SYSTEM,
*Defendants/Appellees*.

No. 1 CA-CV 15-0721
FILED 2-14-2017

Appeal from the Superior Court in Maricopa County
No. LC2015-000115-001 DT
The Honorable Myra A. Harris, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

John R. Coll, P.L.L.C., Phoenix
By John R. Coll
*Counsel for Plaintiffs/Appellants*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Defendant/Appellee Arizona Department of Economic Security
Division of Developmental Disabilities*

Johnston Law Offices, P.L.C., Phoenix
By Logan T. Johnston, III
*Counsel for Defendant/Appellee Arizona Health Care Cost Containment System*

---

**MEMORANDUM DECISION**

Judge James P. Beene delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Margaret H. Downie joined.

---

**B E E N E**, Judge:

¶1        Cabral House L.L.C. ("Cabral House") and its principals, David and Kathy Maniscalco, appeal the superior court's ruling affirming the Arizona Health Care Cost Containment System Director's decision denying Cabral House's billing claim.  For the reasons set forth below, we affirm the superior court's ruling.

## FACTS AND PROCEDURAL BACKGROUND

¶2        David and Kathy Maniscalco are the parents and guardians of Frank Rebelo, a disabled adult.  The Maniscalcos formed Cabral House to provide various services to Rebelo through a contract with the Arizona Department of Economic Security Division of Developmental Services ("DDD").  Since at least December 2004, Cabral House has been a Qualified Vendor licensed by DDD to provide habilitation and residential services. The relationship between Cabral House and DDD is governed by a contract, the Qualified Vendor Agreement (the "QVA").   The QVA allows a Qualified Vendor to be paid for services authorized by DDD under the contract and applicable law.  The authorization of services is provided in the form of an Individual Support Plan ("ISP"), a written statement of services to be provided by Qualified Vendors to an individual with developmental disabilities.  The QVA expressly states that "[u]nder no circumstances shall [DDD] make payment to the Qualified Vendor that exceeds the authorization."

¶3        Since its formation, Cabral House has provided services to Rebelo pursuant to ISPs issued by DDD.  An ISP was issued on May 15, 2012 affording Rebelo 18 hours of habilitation per day. On August 13, 2012, DDD issued an ISP reducing Rebelo's habilitation services from 18 hours a day to three.  The reduction in habilitation was replaced with attendant services, a less intensive treatment option.  Ms. Maniscalco was present

during the meeting at which DDD decided to decrease habilitation hours, voiced her objection to the reduction, and did not sign the ISP as Rebelo's guardian. The August ISP was eventually signed in Ms. Maniscalco's name by an unascertained individual. An investigation performed by DES Office of Special Investigations found that the DDD employee assigned to Rebelo's case forged guardian's signatures on at least one other ISP, but could not confirm that the employee signed Ms. Maniscalco's name to Rebelo's ISP.

¶4        Two weeks after the August ISP was issued, Rebelo, through the Maniscalcos, requested his habilitation be returned to 18 hours per day. DDD denied this request by a Notice of Action ("NOA") on October 18, 2012. Rebelo appealed this decision, and a Notice of Appeal Resolution upheld the NOA on January 2, 2013. Rebelo declined to challenge the Notice of Appeal Resolution. DDD issued another ISP on January 22, 2013, again setting habilitation at three hours per day. Rebelo again challenged the habilitation hours; DDD denied his challenge in a February 26, 2013 NOA. Rebelo did not appeal this second NOA.

¶5        On May 8, 2013, DDD issued an ISP which, for a third time, provided Rebelo three habilitation hours per day. Rebelo objected to the assessment, and again requested 18 hours of habilitation, a request which DDD denied in a May 29, 2013 NOA. A series of appeals followed, and between May 29, 2013 and December 16, 2013, the NOA was upheld in three separate appeals, including a Notice of Appeals Resolution, a decision by an administrative law judge ("ALJ") and a Director's decision upholding the ALJ's decision. These administrative proceedings addressed Rebelo's substantive medical needs, and each upheld the finding that only three hours of habilitation was medically necessary. Rebelo did not pursue an appeal in the superior court from the December 16, 2013 decision by the Director.

¶6        Despite the succession of ISPs authorizing only three hours of habilitation per day, Cabral House continued to provide Rebelo with 18 hours of habilitation per day. Cabral House invoiced DDD for the services, but DDD refused to pay for more than three hours of habilitation a day. On June 26, 2014, Cabral House filed a claim for habilitation it provided between August 2012 and May 2014 in excess of Rebelo's ISPs. DDD denied the claim in an August 14, 2014 Notice of Decision, and Cabral House appealed to an ALJ, who upheld DDD's decision. Cabral House appealed the ALJ's decision to the Director of the Arizona Health Care Cost Containment System, who accepted the ALJ's decision in its entirety.

**¶7**        Cabral House then sought review of the Director's decision in superior court.  The superior court upheld the decision, finding that there was:

> evidence in the record that supported the finding that (1) Cabral House lacked standing to prosecute a claim for services on behalf of Mr. Rebelo; (2) Cabral House was not entitled to third party beneficiary status for any alleged contract; (3) the requested habilitation services were not both medically necessary and cost effective; (4) Ms. Maniscalco's agreement to the change in ISP plans was not required; and (5) any claim was untimely.

**¶8**        Cabral House timely appealed, and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-2101(A)(1), 12-120.21(A)(1), and 12-913 (2017).[1]

## DISCUSSION

**¶9**        Appellants argue at length that due to purported violations of Rebelo's rights by DDD, Cabral House had a contractual and legal obligation to continue providing him 18 hours a day of habilitation.  In response, Appellees argue Appellants lack standing, and there is sufficient evidence to uphold the Director's decision denying Appellants' claim for past billing.

### A.        Standard of Review

**¶10**        The superior court "shall affirm the agency action unless after reviewing the administrative record and supplementing evidence presented at the evidentiary hearing the court concludes that the action is not supported by substantial evidence, is contrary to law, is arbitrary and capricious or is an abuse of discretion."  A.R.S. § 12–910(E) (2017).

**¶11**        This Court reviews "the superior court's ruling to determine whether the record contains evidence to support the judgment, and in doing so, we reach the underlying issue of whether the administrative action was illegal, arbitrary, capricious or involved an abuse of discretion." *Siler v. Ariz. Dep't of Real Estate*, 193 Ariz. 374, 378, ¶ 14, 972 P.2d 1010, 1014 (App. 1998) (internal quotation marks and citations omitted); *see Ritland v.*

---

[1]        Absent material revision after the relevant date, we cite a statute's current version.

*Ariz. State Bd. of Med. Exam'rs*, 213 Ariz. 187, 189, ¶ 7, 140 P.3d 970, 972 (App. 2006) ("We review the agency's application of law *de novo*."). An abuse of discretion occurs when an agency "misapplies the law or fails to consider the relevant facts." *Rios Moreno v. Ariz. Dep't of Econ. Sec.*, 178 Ariz. 365, 367, 873 P.2d 703, 705 (App. 1994).

### B.    Cabral House Does Not Have a Contract with DDD to Provide Services to Frank Rebelo

**¶12**         Appellants claim the QVA incorporates the ISP and, therefore, Cabral House has a contract to provide medical services to Rebelo.[2] Interpretation of a contract is a question of law or a mixed question of law and fact, either of which we review *de novo*. *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 257, 681 P.2d 390, 409 (App. 1983).

**¶13**         Appellants' assertion that the QVA obligates Cabral House to provide services at a specific level to Rebelo is not supported by the QVA or relevant law. There is no clause in the QVA that creates contract rights between Cabral House and any specific individual enrolled in DDD's programs. On the contrary, numerous clauses within the contract make clear that Cabral House has no obligation to any specific individual to provide services above those authorized by the individual's ISP. Such clauses include those that state "[DDD] makes no guarantee . . . to refer members as may be identified or specified herein" and that "[u]nder no circumstances shall [DDD] make payment to the Qualified Vendor that exceeds the authorization." While Qualified Vendors are required by the QVA to maintain a system for reviewing and adjudicating grievances by members, that requirement alone does not grant Qualified Vendors the right to treat an individual beyond the limits authorized by an ISP. It certainly does not allow, as Appellants argue, an *ad hoc* system to provide and bill unauthorized services which the provider believes the member requires.

---

[2]         Appellees argue that this issue is precluded by Appellants' failure to raise it during prior proceedings. We do not consider issues brought for the first time on appeal. *See Pro Finish USA, Ltd. v. Johnson*, 204 Ariz. 257, 267, ¶ 41, 63 P.3d 288, 298 (App. 2003). Appellants have previously argued, however, that the QVA obligates Cabral House to treat Rebelo in accordance with ISPs issued prior to DDD's purported fraud.

### C.    Appellants Lack Standing to Argue Frank Rebelo's Treatment was Authorized

¶14    Appellants' remaining substantive arguments address alleged violations of Rebelo's rights.  Appellants argue that the May 15, 2012 ISP remains the only "authorized" service plan due to violations of Rebelo's due process rights and fraud by DDD.  It follows, they claim, that Cabral House was legally bound to provide services in accordance with the May 2012 ISP.  Appellees argue that Appellants lack standing to make claims on Rebelo's behalf.  Whether Appellants have standing is a question of law we review *de novo*.  *All. Marana v. Groseclose*, 191 Ariz. 287, 289, 955 P.2d 43, 45 (App. 1997).

¶15    Arizona courts "are not constitutionally constrained to decline jurisdiction based on lack of standing."  *Sears v. Hull*, 192 Ariz. 65, 71, ¶ 24, 961 P.2d 1013, 1019 (1998).  Arizona, however, has placed limits on a party's standing to sue another.  To have standing to sue, a plaintiff must have suffered injury in fact, economic or otherwise, from the allegedly illegal conduct, and the injury must be distinct and palpable so that the plaintiff has a personal stake in the outcome.  *See Bennett v. Brownlow*, 211 Ariz. 193, 196, ¶ 17, 119 P.3d 460, 463 (2005).

¶16    Only an enrollee in an Arizona Health Care Cost Containment System program or its representative may challenge the "reduction, suspension, or termination of a previously authorized service."  Ariz. Admin. Code ("A.A.C.") R9-34-202(2)(B); A.A.C. R9-34-208(A).  While a provider may be a representative if authorized by the member, the current action is a claim dispute brought by Rebelo's provider on its own behalf.  For the proposition that a provider may challenge the reduction of services to individual DDD enrollees, Appellants cite *Ariz. Ass'n of Providers for Persons with Disabilities v. Ariz.*, 223 Ariz. 6, 219 P.3d 216 (App. 2009).  This reliance is misplaced.  *Ariz. Ass'n of Providers* holds only that providers have standing if the state reduces the rate at which they are compensated for services rendered, not that reductions in a beneficiary's authorized treatment create a cause of action for that individual's treating provider.

¶17    Without a contract or other obligation to perform services for Rebelo, the Appellants have not suffered a distinct and palpable injury.  It is uncontested that Cabral House provided thousands of hours of uncompensated service to Rebelo between August 1, 2012 and May 13, 2014.  It is also uncontested that every ISP in effect during that time set Rebelo's authorized service at three hours of habilitation per day.  The Appellants were aware of each ISP issued by DDD, and despite numerous

actions by the Maniscalcos acting as Rebelo's guardians, the ISPs were never modified in any proceeding.

¶18 Appellants lack any legal interest in Rebelo's ongoing treatment authorization and have no standing to bring claims on his behalf. As such, we decline to address the numerous substantive issues raised in this appeal.

**CONCLUSION**

¶19 For the foregoing reasons we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA